THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAIME
DE AVILA, Defendant-Appellant.

First District (5th Division)   No. 1—00—0902

Opinion filed August 2, 2002.

Serpico, Novelle & Navigato, Ltd., of Chicago (Robert A. Novelle, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Veronica Calderon Malavia, and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, petitioner Jaime De Avila was found guilty of first degree murder. On direct appeal, this court affirmed. *People v. De Avila*, No. 1—96—4302 (1998) (unpublished order issued pursuant to Supreme Court Rule 23). De Avila, represented by retained counsel, timely filed a petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 1998)). As amended, De Avila's petition alleged that he received ineffective assistance of trial counsel, who failed to cross-examine eyewitness William Peyton regarding a police report stating that Peyton had asked that De Avila and another person step forward during a lineup. De Avila attached a copy of the police report from his trial counsel's file to his petition, as well as a signed statement from Peyton, dated June 25, 1999, that he was not 100% sure that De Avila shot the victim. De Avila also alleged that his trial counsel was ineffective for failing to disclose that he was under investigation by the Attorney Registration and Disciplinary Commission (ARDC) during petitioner's trial. On February 24, 2000, the trial court issued a nine-page order summarily dismissing De Avila's petition as frivolous or patently without merit. De Avila then filed his notice of appeal to this court.

■ The Post-Conviction Hearing Act provides a remedy for defendants who have suffered a substantial violation of their constitutional rights at trial. Under the Act, a postconviction proceeding not involving the death penalty contains three stages. *People v.*

*Edwards,* 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001). At the first stage, the circuit court must independently review the postconviction petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122—2.1(a)(2) (West 1998). At this first stage, the trial court's determination is subject to *de novo* review. *People v. Coleman,* 183 Ill. 2d 366, 388-89, 701 N.E.2d 1063, 1075 (1998). A dismissal may be affirmed on any argument that supports the trial court's judgment, so long as the argument had a sufficient factual basis before the trial court. See *People v. Wright,* 189 Ill. 2d 1, 11, 723 N.E.2d 230, 237 (1999).

The Act also requires that a postconviction petition must be both verified by affidavit (725 ILCS 5/122—1(b) (West 1998)) *and* supported by "affidavits, records, or other evidence" (725 ILCS 5/122—2 (West 1998)). If such affidavits, records, or other evidence *is* unavailable, the petition must explain why. 725 ILCS 5/122—2 (West 1998). The failure to either attach the necessary supporting materials or explain their absence is fatal to a postconviction petition and by itself justifies a summary dismissal. *People v. Collins,* 202 Ill. 2d 59, 66 (2002).

■ De Avila claims he received ineffective assistance of counsel at trial. The trial court dismissed this claim in part on the ground of *res judicata.* "It is well established that the scope of post-conviction review is limited to constitutional matters which have not been, *and could not have been,* previously adjudicated." (Emphasis added.) *People v. Winsett,* 153 Ill. 2d 335, 346, 606 N.E.2d 1186, 1193 (1992). This procedural bar may be relaxed only when: (1) a petitioner offers information *dehors* the record; (2) that information supports a previously unmade claim; and (3) the information also explains why the claim it supports could not have been raised previously. See *People v. Erickson,* 161 Ill. 2d 82, 87-88, 641 N.E.2d 455, 458 (1994).

De Avila argues that *res judicata* does not apply because this particular claim was not decided by this court in the direct appeal. This argument fails, as the procedural bar applies not only to claims previously adjudicated, but also to claims that could have been previously adjudicated.

De Avila also argues that this claim is not barred because it depends on matters outside the trial record, *i.e.,* the police report of the lineup. As our supreme court stated in *Erickson:*

> "The argument glosses over the reason why the procedural bar properly may be relaxed given matters outside the trial record. The bar normally reaches to all matters that could have been—not merely were not—earlier raised. Thus, the mere fact that support for a claim is contained in papers not in the trial record is largely

immaterial. Reason to relax the bar occurs only when what is offered in the papers also explains why the claim it supports could not have been raised on direct appeal." *Erickson*, 161 Ill. 2d at 87-88, 641 N.E.2d at 458.

In this case, De Avila retained new counsel for his posttrial motion and appeal, and De Avila has not argued that the police report could not have been included as part of his posttrial motion. However, as De Avila discharged only one of his trial attorneys, with the other remaining to assist in the posttrial proceedings, this case may fall within the scope of *People v. Lawson*, 163 Ill. 2d 187, 208, 644 N.E.2d 1172, 1182 (1994), in which the failure of posttrial counsel to raise a particular issue did not result in waiver. However, this court need not finally resolve the question of *res judicata*, as the trial court did not err in dismissing this claim for other reasons.

■ In *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), the United States Supreme Court set forth the following two-prong test to determine whether a defendant has been denied effective assistance of counsel: (1) the defendant must show that counsel's representation fell below an objective standard of reasonableness; and (2) the defendant must show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. The defendant must overcome a "strong presumption" that his counsel's conduct falls within the wide range of reasonable professional assistance and that the challenged conduct constitutes sound trial strategy. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. In reviewing the trial court's first-stage dismissal of a postconviction petition, we address De Avila's allegations of ineffectiveness of counsel from the standpoint of whether they are not frivolous, not patently without merit, and not positively rebutted by the record. Where the record shows that a trial strategy, while unsuccessful, was nonetheless reasonable, the trial court may find a claim of ineffective assistance of counsel frivolous and patently without merit. *E.g., People v. Smith*, 326 Ill. App. 3d 831, 761 N.E.2d 306 (2001).

■ In this case, De Avila alleged that he received ineffective assistance because trial counsel failed to cross-examine eyewitness William Peyton regarding a police report stating that Peyton had asked that De Avila and another person step forward during a lineup. De Avila relies largely on *People v. Garza*, 180 Ill. App. 3d 263, 535 N.E.2d 968 (1989), for the proposition that "[t]rial counsel's failure to utilize evidence that undermines a witness' identification is ineffective

assistance of counsel."[1] Initially, we note that this broad proposition is nowhere to be found in *Garza*. To the contrary, the *Garza* court emphasized that the *Strickland* analysis is fact-sensitive and case-specific. *Garza*, 180 Ill. App. 3d at 268-69, 535 N.E.2d at 971.

Given the fact-sensitive nature of the *Strickland* analysis, it is instructive to compare and contrast *Garza* with the case on appeal. In *Garza*:

"The jury found defendant guilty of murder. Defendant had retained new counsel when he presented his motion for a new trial. At the hearing on this motion, Officer Raymond Schalk testified that after a conversation with [sole eyewitness] Donna [Mikolajewski] on the day of the murder he made notes containing the words 'possible scar on arm above a tattoo.' He stated that this was written after Donna told him that defendant had told Nuckols he was a Pope and that he had scars and tattoos to prove it, but that she had not seen them. It was stipulated that if Officer Noon were called to testify, he would state that Donna chose two pictures out of a mug book, one of Sean Ronan and one of Daniel Ulbert, and said they 'looked similar' to Nuckols' attacker. She later viewed a more recent photo of Ronan and decided that he was not the offender; she then viewed Ulbert in a lineup but did not identify him. Photos of these men were admitted into evidence for purposes of the post-trial motion." *Garza*, 180 Ill. App. 3d at 266-67, 535 N.E.2d at 970.

In holding that Garza had received ineffective assistance of counsel, this court stated:

"Contrary to the State's suggestion, trial counsel could not have made a tactical decision not to submit the photographs of Ronan and Ulbert for the jury's review, because he simply failed to obtain them and in fact never saw them. It was not until the hearing was

---

[1] De Avila also cites *People v. Davis*, 203 Ill. App. 3d 129, 560 N.E.2d 1072 (1990), in which trial counsel failed to call two eyewitnesses who failed to pick the accused from a lineup and could not recall interviewing the witnesses. In this case, Peyton did not fail to identify De Avila, and the police report at issue was in trial counsel's file. De Avila further relies on *People v. DeJesus*, 163 Ill. App. 3d 530, 516 N.E.2d 801 (1987), which held that, under the circumstances of that case, the accused was entitled to a hearing on the lineup identification out of the presence of the jury. In this case, De Avila had a bench trial and the record shows that the trial court determined that De Avila did not show that the lineup was suggestive. De Avila relies on *DeJesus* on the question of whether the State could have introduced the lineup identification to rehabilitate Peyton after the cross-examination De Avila claims should have occurred. This court's disposition of this case renders it unnecessary to consider that question.

held on the post-trial motion that defense counsel first obtained the photographs and had them admitted into evidence. Nor do we agree with the State that the defense's failure to call witnesses to corroborate defendant's testimony was simply a trial stratagem. We can conceive of no sound tactical reason not to call defendant's sister [who would have corroborated his alibi defense], Groves and Mroczka [who both would have testified that defendant was not responsible for the motorcycle incident and that he turned himself in only to cover for another gang member]; moreover, the consequence of counsel's failure to do so was the abandonment of a defense after defendant had pointedly presented it in his testimony. Failure to adequately investigate and develop an available defense has been found to be ineffective assistance (*People v. Wright* (1986), 111 Ill. 2d 18, 488 N.E.2d 973), as has failure to present available witnesses to corroborate a defense (*People v. Solomon* (1987), 158 Ill. App. 3d 432, 511 N.E.2d 875).

We find it necessary to reiterate that the evidence in this case is very closely balanced, with only one witness identifying defendant as the offender; an identification, as we have already noted, not without its debilities." *Garza*, 180 Ill. App. 3d at 269, 535 N.E.2d at 972.

In this case, unlike *Garza*, De Avila does not claim that his trial counsel failed to obtain the police report. Indeed, De Avila's brief states that the police report at issue was in trial counsel's file. Thus, this is not a case where the failure to question Peyton about the lineup identification is immediately removed from the realm of trial strategy.

De Avila argues that the failure to cross-examine Peyton based on the report cannot be considered trial strategy because Peyton's "hesitant and uncertain" identification at the lineup seriously undermined his identification testimony. The State responds that not questioning Peyton about the lineup was within the realm of sound trial strategy, because what De Avila characterizes as "hesitant and uncertain" could just as easily be characterized as cautious and careful. De Avila replies that the State's characterization is self-serving, ignoring that his own characterization is self-serving.

In *People v. Leger*, 149 Ill. 2d 355, 396-97, 597 N.E.2d 586, 604 (1992), our supreme court held that defense counsel reasonably could have decided not to object to police testimony regarding the defendant's exercise of his fifth amendment privilege against self-incrimination and argue its impropriety in order not to call further attention to it. In this case, the trial judge was not only the trier of fact, but also had ruled on the motion to suppress the lineup identification. Although it is legally presumed that the trial judge did not consider the excluded identification absent evidence rebutting that presumption, counsel

undoubtedly knew that the trier of fact was aware of the identification. A review of the record shows that it was trial counsel's strategy to suppress the lineup identification, attack Peyton's ability to have observed De Avila at the scene of the offense, and suggest that the photograph array would not depict people from the angle at which Peyton would have observed the driver of the automobile carrying the shooter. Defense counsel thus would not have sought to emphasize the lineup at trial.

Moreover, the evidence in this case was not as closely balanced as in *Garza.* Peyton identified not only De Avila, but also his car. Indeed, two witnesses identified De Avila's car on the day of the incident and from photographs at trial. *De Avila,* slip order at 7. Furthermore, Peyton's identification was corroborated by the dying declaration of Thomas Carroll to Chicago police officer McInnery that "Jaime" was responsible for Carroll's death. One of De Avila's friends, John Garza, testified that in late May 1994 (less than a month before the shooting) De Avila said that he hated Carroll and wanted to shoot him and kill him. Nor does the record show the sort of inconsistent eyewitness identification testimony that was present in *Garza.*

De Avila sought to support his postconviction petition with a signed statement from Peyton, dated June 25, 1999, that he was not 100% sure that De Avila shot the victim. Although such a statement is an improvement over the unsigned, unsworn report submitted but rejected in *People v. Enis,* 194 Ill. 2d 361, 379-80, 743 N.E.2d 1, 12-13 (2000), the Act requires that a postconviction petition must be supported by "affidavits, records, or other evidence" (725 ILCS 5/122—2 (West 1998)). If such affidavits, records, or other evidence is unavailable, the petition must explain why. 725 ILCS 5/122—2 (West 1998). The failure to either attach the necessary supporting materials or explain their absence is fatal to a postconviction petition and by itself justifies a summary dismissal. *People v. Collins,* 202 Ill. 2d at 66.

In this case, the trial court correctly noted that the statement was not an affidavit. De Avila has not pointed to anything in the record explaining the lack of an affidavit; our review of the record shows that counsel informed the trial court that Peyton had ceased cooperating with the defense. Moreover, even if this court were to consider the statement as "other evidence," despite the fact that the rationale for the statutory requirement of an affidavit would be the increased reliability and trustworthiness of a sworn statement, we note that Peyton testified at trial that De Avila was the *driver of the getaway car,* not that he was the shooter. Thus, the question of whether, years later, Peyton was certain that De Avila shot Carroll is of little consequence.

The statement is clearly not a "recantation," as asserted by De Avila. Furthermore, the fear that De Avila was convicted based solely on Peyton's identification, as expressed in the written statement, is unfounded, given the corroborative evidence detailed above.

■ Finally, De Avila alleged that he received ineffective assistance of counsel where trial counsel failed to disclose that he was under investigation by the ARDC during petitioner's trial. Our supreme court addressed a similar claim in *People v. Szabo*, 144 Ill. 2d 525, 582 N.E.2d 173 (1991):

> "Defendant first urges this court to grant him a new trial solely on the basis of Landau's problems with the ARDC. In support of his contention, defendant relies exclusively on *People v. Williams* (1982), 93 Ill. 2d 309 [, 444 N.E.2d 136], in which this court ordered a new trial for a defendant whose trial counsel had been disbarred following an ARDC investigation which overlapped with defendant's trial. The *Williams* court characterized the facts as 'unique circumstances and sequence of events *** which will rarely, if ever, be duplicated.' (93 Ill. 2d at 325.) We now hold that the *Williams* decision was an aberration peculiar to the facts of that case. The unique circumstances of *Williams* have not been duplicated here and we decline to follow its holding.
>
> Notwithstanding our view that *Williams* was a singular ruling, we note that the factual differences between the two cases are marked, and application of the *Williams* decision to the instant facts would be inappropriate. In *Williams*, the defendant offered 'numerous instances of inaction by counsel to demonstrate that he was denied the effective assistance of counsel.' (93 Ill. 2d at 324.) This court's doubts about counsel's representation were accentuated by the burden of his simultaneous defense of three clients before two juries. (93 Ill. 2d at 325.)" *Szabo*, 144 Ill. 2d at 529, 582 N.E.2d at 174-75.

In this case, De Avila relies on the supreme court's decision in *Williams* and this court's opinion following the new trial, *People v. Williams*, 226 Ill. App. 3d 188, 589 N.E.2d 695 (1992). Indeed, De Avila pointedly notes that Williams was represented on remand by Leo Fox—the same attorney who represented De Avila at trial. De Avila also cites a ruling by a federal district court ruling that Fox was ineffective in another case. However, in this case, unlike the first trial in *Williams*, counsel was representing only one client in a bench trial. Moreover, following the new trial, this court rejected the ineffective assistance claim regarding Leo Fox. Furthermore, as the State correctly notes, the record in this case shows that Fox filed a number of pretrial motions, including a motion to dismiss based on the destruction of De Avila's car, and successfully moved to have the lineup

identification suppressed. Fox also vigorously cross-examined the witnesses and argued the weaknesses of the State's case during closing argument. In this appeal, De Avila's only specific criticism of Fox addressed one aspect of the cross-examination of Peyton; that claim is meritless for the reasons discussed above. In sum, regardless of whether Fox may have been ineffective in other cases, De Avila's allegation that Fox was ineffective in this case is positively rebutted by the record. Illinois courts will uphold the summary dismissal of a postconviction petition when the record from the original trial proceedings contradicts the defendant's allegations. See, *e.g.*, *People v. Rogers*, 197 Ill. 2d 216, 222, 756 N.E.2d 831, 834 (2001).

For all of the aforementioned reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

GREIMAN and QUINN, JJ., concur.