THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGELA M. LITTLE, Defendant-Appellant.

Fourth District   No. 4—01—0536

Argued December 18, 2002.—Opinion filed January 8, 2003.—Rehearing denied February 4, 2003.

Daniel M. Kirwan and Paige Clark Strawn (argued), both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Tony Lee, State's Attorney, of Paxton (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 2001, defendant, Angela M. Little, *pro se* filed a petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 through 122—8 (West 2000)), alleging, *inter alia*, that (1) her trial counsel provided ineffective assistance by failing

to conduct a survey concerning the effect of pretrial publicity to support defendant's motion to change venue; and (2) her appellate counsel provided ineffective assistance by failing to argue that the trial court erred by denying her motion to change venue. In April 2001, the trial court dismissed defendant's postconviction petition under section 122—2.1 of the Act, upon finding that it was untimely filed (725 ILCS 5/122—2.1 (West 2000)).

Defendant appeals, arguing that the trial court (1) erred by dismissing her postconviction petition, and (2) lacked the authority to order that her Department of Corrections (DOC) wages be withheld and remitted to the circuit clerk. We affirm.

## I. BACKGROUND

In January 1998, defendant's estranged husband, Craig Little, was murdered by 15-year-old Anthony Jennings, who was accompanied by Carl Dueringer, defendant's boyfriend, pursuant to a plan between defendant, Dueringer, and Jennings. In February 1998, the State charged defendant with first degree murder (count I) (720 ILCS 5/9—1(a)(1) (West Supp. 1997)) and solicitation of murder for hire (count II) (720 ILCS 5/8—1.2(a) (West 1998)). Prior to defendant's trial, the State dismissed count II.

In June 1998, defendant filed a motion to change venue due to pretrial publicity in Ford County. In July 1998, the State filed a response to defendant's motion. In September 1998, the trial court denied defendant's motion to change venue, stating as follows:

"I've had the opportunity to review the motion for change of venue, which has attached to it numerous news articles from the Bloomington paper, the Paxton paper ***. Gibson City is in here. It looks like Champaign as well. *** And the gist of the motion is that this publicity has made it or will make it impossible to find a jury panel who could fairly try the issues in this case. And the size of Ford County makes jury selection problematic with a high[-]profile case. There is no doubt about that. And it becomes, in my view, more difficult.

I would acknowledge today that it would be more difficult in Ford County to pick a jury than it would up in Morris in Grundy County. Now, that's not a reason to change venue. The only reason that we change venue is because a [c]ourt finds, based upon pretrial publicity, that the population in Ford County is so prejudiced against the defendant that we will not be able to pick a fair and impartial jury. *I believe it is a difficult standard to meet and one which without some sophisticated surveys *** is very difficult to meet.* And the information provided in the motion does not establish in my view that the community is prejudiced. It simply establishes

that there is quite a bit of publicity; and to those who have read every single article, they may have formed some opinions. Jurors may be selected and sworn to hear a case that they are familiar with from the newspapers if they can set it aside. It's a standard question. That's the way we pick juries all the time.

And in the final analysis, the test for whether or not venue ought to remain here or be moved occurs at jury selection, and *change of venue motions are never over until the jury is selected.* And so if it turns out to be a difficult proposition or an impossible one in selecting [a] jury, I believe that that can always be revisited, at least until jurors are sworn it can be. *But to make a finding that I must change venue [because] the population is prejudiced against the defendant, I can[ ]not based upon the evidence that the parties have submitted th[u]s far.* So the motion for change is denied." (Emphases added.)

During *voir dire*, the trial court questioned 69 venire members. Of those, 36 had been exposed to pretrial publicity, and the court excused three venire members for cause because they had already formed opinions based on that publicity. Defendant did not renew her motion to change venue following jury selection.

Following her November 1998 trial, the jury convicted defendant of first degree murder (720 ILCS 5/9—1(a)(1) (West Supp. 1997)). The trial court later sentenced her to 56 years in prison. The court also ordered that (1) defendant pay $315 in court costs; and (2) the DOC withhold 50% of defendant's DOC wages and remit those funds to the Ford County circuit clerk to be applied toward the amounts due in costs.

On direct appeal, this court affirmed defendant's conviction and sentence (*People v. Little*, No. 4—99—0145 (March 31, 2000) (unpublished order under Supreme Court Rule 23)). In July 2000, the Supreme Court of Illinois denied defendant's petition for leave to appeal (*People v. Little*, 189 Ill. 2d 695, 734 N.E.2d 896 (2000)).

As earlier stated, in January 2001, defendant *pro se* filed a postconviction petition. In support of her petition, she attached several documents, including the following: (1) an affidavit, in which defendant averred that her family members overheard jurors complaining because they were not allowed to sentence defendant; (2) the affidavit of Randy Berger, in which he averred that Darrell Rickey had told him that (a) juror 218 had made some "prejudice [*sic*] remarks" about defendant before trial, and (b) Rickey and juror 218 had discussed defendant's poor work attendance record; and (3) 15 newspaper articles regarding the incident and the trial proceedings. In April 2001, the trial court dismissed defendant's postconviction peti-

tion as untimely under section 122—2.1 of the Act (725 ILCS 5/122—2.1 (West 2000)).

This appeal followed.

## II. ANALYSIS

### A. Proceedings Under the Act

■ A defendant may proceed under the Act by alleging "that in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122—1 (West 2000). A petition filed under the Act must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122—2 (West 2000). The petition shall have attached "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122—2 (West 2000).

The Act establishes a three-stage process for adjudicating a post-conviction petition (725 ILCS 5/122—1 through 122—8 (West 2000); *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001)), and this case involves the trial court's dismissal of defendant's post-conviction petition at the first stage. At this stage, the Act does not permit any further pleadings from the defendant or any motions or responsive pleadings from the State. *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996). Instead, the court determines whether the petition alleges a constitutional infirmity that would necessitate relief under the Act. Unless positively rebutted by the record, all well-pled allegations are taken as true at this stage. *People v. Coleman*, 183 Ill. 2d 366, 380-81, 701 N.E.2d 1063, 1071 (1998).

Dismissal at the first stage of postconviction proceedings is warranted when the trial court independently reviews the postconviction petition and determines that "the petition is frivolous or is patently without merit." 725 ILCS 5/122—2.1(a)(2) (West 2000); *Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445. A postconviction petition is considered frivolous or patently without merit only if the allegations in the petition fail to present the " 'gist of a constitutional claim.' " *Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445, quoting *Gaultney*, 174 Ill. 2d at 418, 675 N.E.2d at 106. The "gist" standard is " 'a low threshold.' " *Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445, quoting *Gaultney*, 174 Ill. 2d at 418, 675 N.E.2d at 106. To set forth the "gist" of a constitutional claim, the postconviction petition " 'need only present a limited amount of detail' " and hence need not set forth the claim in its entirety. *Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445, quoting *Gaultney*, 174 Ill. 2d at 418, 675 N.E.2d at 106.

■ "In considering a petition pursuant to [section 122—2.1 of the

Act], the [trial] court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding[,] and any transcripts of such proceeding." 725 ILCS 5/122—2.1(c) (West 2000). The court should examine those records to determine whether the allegations are positively rebutted by the record. That determination will assist the court in resolving the issue as to whether the petition is frivolous or patently without merit. *People v. Smith*, 326 Ill. App. 3d 831, 840, 761 N.E.2d 306, 315 (2001). On appeal from a first-stage dismissal, this court reviews *de novo* the trial court's decision. *Edwards*, 197 Ill. 2d at 247, 757 N.E.2d at 447.

Our supreme court has consistently upheld the first-stage dismissal of a postconviction petition when the record from the original trial proceedings contradicts the defendant's allegations. *People v. Rogers*, 197 Ill. 2d 216, 222, 756 N.E.2d 831, 834 (2001); see *People v. Jones*, 66 Ill. 2d 152, 157, 361 N.E.2d 1104, 1106 (1977) ("A court may also properly dismiss a post[ ]conviction petition if the record of proceedings at trial shows the petition to be nonmeritorious"); see also *People v. De Avila*, 333 Ill. App. 3d 321, 329, 775 N.E.2d 79, 85 (2002) ("courts will uphold the summary dismissal of a postconviction petition when the record from the original trial proceedings contradicts the defendant's allegations").

### B. Dismissal of Defendant's Postconviction Petition

Defendant first argues that the trial court erred by dismissing her postconviction petition. We disagree.

■ Initially, we note that in *People v. Boclair*, 202 Ill. 2d 89, 97 (2002), the supreme court held that during the first-stage review of a postconviction petition, a trial court may not dismiss the petition as untimely filed. Thus, the trial court erred by dismissing defendant's postconviction petition as untimely during these first-stage proceedings. However, because this court may affirm the trial court's judgment on any basis supported by the record, we determine whether defendant's postconviction petition presents the gist of a constitutional claim.

### 1. *Defendant's Claim That She Received Ineffective Assistance of Trial Counsel*

Defendant first contends that the trial court erred by dismissing her postconviction petition because it stated the gist of a meritorious constitutional claim that her trial counsel provided ineffective assistance when he failed to conduct a survey concerning the effect of pretrial publicity to support defendant's motion for a change of venue, as the trial court had suggested. Defendant bases this claim on the court's remarks that (1) a motion to change venue is best supported

by "sophisticated surveys"; and (2) it could not grant defendant's motion based on the evidence then before it, but the motion was subject to reconsideration following jury selection. We conclude that defendant's petition failed to state the gist of a meritorious constitutional claim.

■ To establish a claim of ineffective assistance of counsel, a defendant must satisfy the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). First, the defendant must prove that counsel made errors so serious, and counsel's performance was so deficient, that counsel was not functioning as the "counsel" guaranteed by the sixth amendment to the United States Constitution (U.S. Const., amend. VI).

Second, the defendant must establish prejudice—that is, she must prove that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Further, this prejudice prong of the *Strickland* test entails more than an "outcome-determinative" test; the defendant must also show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163-64 (1999). Because a defendant must satisfy both prongs of the *Strickland* test, a reviewing court can dispose of a claim of ineffective assistance of counsel solely on the ground that the defendant did not suffer prejudice without deciding whether counsel's performance was constitutionally deficient. *Evans*, 186 Ill. 2d at 94, 708 N.E.2d at 1164.

■ In this case, the record positively rebuts defendant's claim that her trial counsel's failure to conduct a survey to support her motion for change of venue prejudiced her. See *Rogers*, 197 Ill. 2d at 222, 756 N.E.2d at 834. A defendant is entitled to a change of venue as a result of pretrial publicity if a reasonable apprehension exists that she cannot receive a fair and impartial trial. *People v. Fort*, 248 Ill. App. 3d 301, 309, 618 N.E.2d 445, 452 (1993). "Exposure to publicity about a case is not enough to demonstrate prejudice because jurors need not be totally ignorant of the facts and issues involved in a case." *People v. Kirchner*, 194 Ill. 2d 502, 529, 743 N.E.2d 94, 108 (2000). Instead, what is essential is that the jurors ultimately chosen must be able to lay aside impressions or opinions and render a verdict based upon the evidence at trial. *People v. Sutherland*, 155 Ill. 2d 1, 16, 610 N.E.2d 1, 7 (1992). Thus, the relevant inquiry on appeal is not how much pretrial publicity occurred, but whether the defendant received a fair and impartial trial. *People v. Lucas*, 132 Ill. 2d 399, 422, 548 N.E.2d 1003, 1011 (1989).

■ The record shows that the jury that heard defendant's case was fair and impartial. Of the 12 jurors selected, only 8 had even read or heard about the case. Five of those eight jurors had read or heard initial news accounts of the case but had read or heard nothing nearer the time of defendant's trial; one juror had only "vaguely" heard about the case; one juror had heard coworkers talking about a single newspaper article; and the remaining juror had heard others talking about the case months before *voir dire*. Each of those eight jurors expressed a willingness to put aside what he or she knew about the case and decide it based only on the evidence presented at trial. Each also stated that he or she could set aside any bias or prejudice and be open-minded and fair to both sides.

Contrary to defendant's contention, the newspaper articles and affidavits attached to her postconviction petition do not support her claim of ineffective assistance of trial counsel. Whether jurors had heard about the case prior to *voir dire* is not the issue. Instead, as earlier stated, the relevant inquiry on appeal is whether the defendant actually received a fair and impartial trial. The newspaper articles about defendant's case generally described the circumstances of the murder and defendant's arrest, the charges against defendant and her codefendants, the police investigation, and the impact of the victim's death on his surviving family members. The content of those articles was not so prejudicial to defendant that the jurors' assertions of impartiality and fairness should be disregarded. In addition, even accepting that postconviction allegations can properly be supported by affidavits containing inadmissible hearsay, the affidavits attached to defendant's petition do not suggest that the jurors who ultimately heard defendant's case were biased and unfair despite their assertions otherwise.

Because neither the record nor defendant's postconviction filings support defendant's claim that the jury that ultimately decided her case was not fair and impartial, defendant fails to state the gist of a meritorious claim that her trial counsel was ineffective for failing to conduct a survey concerning the effect of pretrial publicity to support her motion to change venue. Simply put, because the record establishes that defendant received a fair and impartial trial, the fact that her trial counsel failed to conduct a survey is of no moment. Accordingly, we conclude that the trial court did not err by dismissing defendant's postconviction petition.

In so concluding, we commend the trial court for its handling of defendant's motion for change of venue. As the court recognized, a pretrial ruling denying a defendant's motion to change venue is subject to reconsideration following jury selection. In this regard, such a rul-

ing is akin to a denial of a motion *in limine.* See *People v. Drum*, 321 Ill. App. 3d 1005, 1008, 748 N.E.2d 344, 347 (2001) (noting that when a trial court addresses a motion *in limine* on the merits, its ruling is always subject to reconsideration during trial). After all, because the best evidence of whether a fair and impartial jury can be selected will be the responses of the prospective jurors during the jury selection process, the wisest course for a court to take often will be to initially deny the motion for change of venue because it is based upon speculation and revisit the matter—either on defendant's motion or *sua sponte*—once the jury selection process has occurred.

We are not suggesting that a trial court should never grant a motion to change venue prior to jury selection. In some cases, the extent or effect of the pretrial publicity may warrant a change of venue. See, for example, *People v. Taylor*, 101 Ill. 2d 377, 395, 462 N.E.2d 478, 486-87 (1984) (holding that the trial court should have granted the defendant's motion to change venue based on the documented "unprecedented volume of publicity" combined with the jurors' exposure to polygraph information, which was particularly persuasive and highly prejudicial). In other cases, the State may decide not to oppose the defendant's motion to change venue. We simply note that a trial court's denial of a defendant's pretrial motion to change venue is always subject to reconsideration following jury selection.

### 2. Defendant's Claim That She Received Ineffective Assistance of Appellate Counsel

■ Defendant also contends that the trial court erred by dismissing her postconviction petition because it stated the gist of a meritorious constitutional claim that her appellate counsel provided ineffective assistance when he failed to raise the issue of trial counsel's ineffectiveness "for failing to follow the trial court's directive" to conduct a survey concerning the effect of pretrial publicity. We disagree.

A defendant who claims that his appellate counsel rendered ineffective assistance must show that (1) the failure to raise the issue on appeal was objectively unreasonable; and (2) this decision prejudiced the defendant. *People v. Enis*, 194 Ill. 2d 361, 377, 743 N.E.2d 1, 11 (2000). Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues that, in counsel's judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. Accordingly, unless the underlying issues are meritorious, the defendant suffers no prejudice from counsel's failure to raise them on appeal. *People v. Haynes*, 192 Ill. 2d 437, 476, 737 N.E.2d 169, 190 (2000).

Given our conclusion that trial counsel was not ineffective for fail-

ing to conduct a survey, defendant cannot state the gist of a meritorious claim that her appellate counsel was ineffective for failing to raise on appeal the issue of trial counsel's ineffectiveness.

## C. Wage Withholding Order

■ Last, defendant argues that the trial court lacked the authority to order that her DOC wages be withheld and remitted to the circuit clerk.

Defendant raises this issue for the first time in her appeal from the trial court's dismissal of her postconviction petition. In *People v. Griffin*, 321 Ill. App. 3d 425, 428, 748 N.E.2d 1235, 1238 (2001), this court declined to construe the Act as permitting a defendant to raise on appeal from the dismissal of a postconviction petition an issue she never raised in that petition. We adhere to *Griffin* and thus deem this issue forfeited. See also *People v. Moore*, 189 Ill. 2d 521, 544, 727 N.E.2d 348, 360 (2000) (in which the supreme court declined to address the merits of the defendant's claim when he first raised it in his appeal from the dismissal of his amended postconviction petition).

Even assuming that defendant had not forfeited this issue, we conclude that her claim is not cognizable under the Act. In *Haynes*, 192 Ill. 2d at 464, 737 N.E.2d at 184, the supreme court discussed proceedings under the Act as follows:

> "The [Act] provides a mechanism by which criminal defendants can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. [Citation.] An action for post[ ]conviction relief is a collateral proceeding, not an appeal from the underlying conviction and sentence. [Citations.] In order to be entitled to post[ ]conviction relief, a defendant must establish a *substantial deprivation of federal or state constitutional rights*." (Emphasis added.)

The issue raised by defendant involves a matter created by statute involving the payment of costs and fees. This court has held that such statutorily created matters do not constitute a "deprivation of federal or state constitutional rights" and, thus, are not cognizable under the Act. See *Griffin*, 321 Ill. App. 3d at 428, 748 N.E.2d at 1238 (a trial court's failure to hold a hearing regarding a defendant's financial ability to reimburse the State for appointed counsel's fees violates statutory law but "does not constitute *any* 'deprivation of federal or state constitutional rights,' much less a 'substantial' one" (emphasis in original)); *People v. Guerrero*, 311 Ill. App. 3d 968, 970, 725 N.E.2d 783, 784-85 (2000) ($5-per-day credit against an imposed fine does not establish a substantial deprivation of federal or state constitutional rights).

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER and APPLETON, JJ., concur.