THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TOMMY L. FOSTER, Defendant-Appellant.

Fourth District    No. 4—08—0648

Opinion filed June 5, 2009.

Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Daniel M. Kirwan and Paige Clark Strawn, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Jack Ahola, State's Attorney, of Decatur (Patrick Delfino, Stephen E. Norris, and Kelly M. Stacey, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In April 2006, a jury convicted defendant, Tommy L. Foster, of burglary (720 ILCS 5/19—1(a) (West 2004)) and obstructing justice (720 ILCS 5/31—4(a) (West 2004)). In May 2006, the trial court sentenced him to 15 years in prison for burglary and 1 year for obstructing justice, to be served concurrently.

In May 2008, defendant *pro se* filed a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122—1 through 122—8 (West 2006)), arguing, in pertinent part, that the trial court denied him his sixth amendment right to self-representation. In July 2008, the court dismissed defendant's petition under section 122—2.1(2) of the Act (725 ILCS 5/122—2.1(2) (West 2006)), upon finding that it was frivolous and patently without merit.

Defendant appeals, arguing only that the trial court erred by dismissing his petition for postconviction relief because it contained the gist of a constitutional claim. We disagree and affirm.

## I. BACKGROUND

In August 2005, the State charged defendant with two counts of burglary (counts I and II) (720 ILCS 5/19—1(a) (West 2004)) and obstructing justice (count III) (720 ILCS 5/31—4(a) (West 2004)). (The State later dismissed count I.) Count II alleged, in part, that defendant committed the offense of burglary in that he knowingly entered the Oasis Day Center with the intent to commit a theft.

On December 5, 2005, the same day as defendant's trial, defendant's appointed counsel, Scott A. Rueter, informed the trial court that he was on the board of directors for the Heritage Behavioral Health Center. Rueter explained that (1) Heritage provided mental-health and substance-abuse services to the community and (2) the board devised policy that controlled Heritage's operations, which included the Oasis Day Center. Rueter acknowledged that he should have previously disclosed his board membership, but he failed to fully appreciate the conflict-of-interest implications. Rueter decided to inform the court before jury selection commenced to avoid any appearance of impropriety. That same day, the court (1) granted Rueter's request to withdraw as defendant's counsel, (2) directed the public defender to appoint new counsel, and (3) scheduled a December 20, 2005, pretrial hearing.

Two weeks later, at the December 20, 2005, pretrial hearing, the following colloquy occurred:

"[DEFENDANT]: *** Your Honor, I don't have an attorney. Could I please say something[,] Your Honor?
THE COURT: Sure.

[DEFENDANT]: I went to trial, and the attorney that I had quit my case the day of trial because he said he was affiliated with my case. He was on my case for [four] months. I feel like I am being railroaded, Your Honor. I don't know what to do.

THE COURT: Can I see a *** docket entry[?]

CORRECTIONS OFFICER: It shows *** Rueter was on the case.

[DEFENDANT]: I want to know can I represent myself?

THE COURT: Wait a second. All right, on *** December the 5th, it shows that *** Rueter said he had a conflict; that he is on the board of directors of the Behavior[al] Health Center which is the owner of the Oasis Day Center, and *** Rueter recused himself. The cause was *** reassigned to [the] public defender for reassignment. The jury allotment was vacated. So [the public defender] should have appointed you another lawyer.

* * *

[DEFENDANT]: I don't want an attorney, Your Honor. I would rather represent—I don't feel that I have been treated fair[ly.]

THE COURT: Look, I understand you are upset. Perhaps [Rueter] should have realized he had a conflict first, but rather than go through a trial *** with a conflict[,] a decision was made.

I don't know why [the public defender] *** did not assign you another [lawyer], but I will assign you one today. And why don't you try to work with that [lawyer] first. *** Okay[?]

Let me try appointing you a lawyer first, sir. I think you will be better off. If you want to waive your right to a lawyer and represent yourself at a later time, then I will allow you to do it. Okay? I think it is in your best interest.

[DEFENDANT]: Do you know which lawyer you will appoint me?

* * *

THE COURT: No, it is not up to me. It is up to [the public defender] to decide which one. I will have to find out why [the public defender] didn't assign you a lawyer. He *** should have known about this.

I am going to continue this to this afternoon *** and I will take it up with [the public defender].

[DEFENDANT]: Thank you, Your Honor."

Later that afternoon, the trial court held a hearing in which (1) the public defender appointed Phil Tibbs to represent defendant, (2) the court scheduled a January 2006 pretrial hearing, and (3) the following colloquy occurred:

"[DEFENDANT]: Excuse me Your Honor. Do I have to have a continuance? What if I didn't want a continuance?

THE COURT: It's up to the lawyer. [There are] five decisions a defendant has to make, and a continuance is not one of them.

[DEFENDANT]: Your Honor, they [are] just doing whatever they want to do with me, man. I ain't [*sic*] got no say.

THE COURT: Now, look, sir. Come here for a second.

[DEFENDANT]: They do whatever they want to do.

THE COURT: You said to me you wanted to, at one time, waive counsel. You try to work it out with \*\*\* [Tibbs]. He's the lawyer we appointed for you, and if you want to represent yourself, I'll bring you down; you can waive a lawyer at that time and you can represent yourself; but, if I were you, I'd first talk to [Tibbs]. I think it's in your best interests."

Thereafter, Tibbs represented defendant at (1) four additional pretrial hearings over a four-month period and (2) defendant's trial.

In April 2006, a jury convicted defendant of burglary (720 ILCS 5/19—1(a) (West 2004)) and obstructing justice (720 ILCS 5/31—4(a) (West 2004)). In May 2006, the trial court sentenced him to 15 years in prison for burglary and 1 year for obstructing justice, to be served concurrently.

Defendant appealed his burglary conviction, and this court affirmed. *People v. Foster*, No. 4—06—0915 (August 28, 2007) (unpublished order under Supreme Court Rule 23).

In May 2008, defendant *pro se* filed a petition for relief under the Act, alleging, in pertinent part, that the trial court denied him his sixth amendment right to self-representation. In July 2008, the court dismissed defendant's petition under section 122—2.1(2) of the Act (725 ILCS 5/122—2.1(2) (West 2006)), upon finding that it was frivolous and patently without merit.

This appeal followed.

## II. THE TRIAL COURT'S FIRST-STAGE DISMISSAL OF DEFENDANT'S *PRO SE* PETITION FOR POSTCONVICTION RELIEF

### A. Proceedings Under the Act

A defendant may proceed under the Act by alleging that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both" (725 ILCS 5/122—1(a)(1) (West 2006)). A petition brought under the Act is a collateral proceeding that permits inquiry only into constitutional issues that the defendant did not raise and could not have raised on direct appeal. *People v. Blair*, 215 Ill. 2d 427, 447, 831 N.E.2d 604, 617 (2005). In noncapital cases, the Act establishes a three-stage process for adjudicating a postconviction petition. 725 ILCS 5/122—1 through 122—8 (West 2006); *People v. Jones*, 213 Ill. 2d 498, 503, 821 N.E.2d 1093, 1096 (2004).

At the first stage, the trial court determines, without input from the State, whether the petition is frivolous or patently without merit. 725 ILCS 5/122—2.1 (West 2006). To withstand dismissal at the first stage, the petition need only state the gist of a constitutional claim for relief. *People v. Patton*, 315 Ill. App. 3d 968, 972, 735 N.E.2d 185, 189 (2000). To set forth the "gist" of a constitutional claim, the petition need not be in great detail nor set forth the claim in its entirety. *People v. Williams*, 364 Ill. App. 3d 1017, 1022, 848 N.E.2d 254, 258 (2006). In considering the petition, the trial court may examine the court file of the proceeding in which the petitioner was convicted, any transcripts of that proceeding, and any action taken by the appellate court. *Williams*, 364 Ill. App. 3d at 1022-23, 848 N.E.2d at 258. " 'The court should examine those records to determine whether the allegations [in the complaint] are positively rebutted by the record.' " *Williams*, 364 Ill. App. 3d at 1023, 848 N.E.2d at 258, quoting *People v. Little*, 335 Ill. App. 3d 1046, 1050-51, 782 N.E.2d 957, 962 (2003).

The trial court may also dismiss claims that are (1) barred by *res judicata* or (2) forfeited because the defendant could have raised, but failed to raise, them in an earlier proceeding. *Blair*, 215 Ill. 2d at 444-45, 831 N.E.2d at 615-16. We review *de novo* a first-stage dismissal of a petition under the Act. *Little*, 335 Ill. App. 3d at 1051, 782 N.E.2d at 962.

## B. Defendant's Claim That His Postconviction Petition Stated the Gist of a Constitutional Claim

Defendant argues that the trial court erred by dismissing his *pro se* petition for postconviction relief because it contained the gist of a constitutional claim. Specifically, defendant contends that the court denied him his sixth amendment right to self-representation. We disagree.

It is well established that the sixth amendment to the United States Constitution provides for the right of self-representation in criminal proceedings. *Faretta v. California*, 422 U.S. 806, 821, 45 L. Ed. 2d 562, 574, 95 S. Ct. 2525, 2534 (1975); *People v. Ward*, 208 Ill. App. 3d 1073, 1080, 567 N.E.2d 642, 646 (1991). "The right of self-representation is 'as basic and fundamental as [the] right to be represented by counsel.' " *People v. Haynes*, 174 Ill. 2d 204, 235, 673 N.E.2d 318, 332 (1996), quoting *People v. Nelson*, 47 Ill. 2d 570, 574, 268 N.E.2d 2, 5 (1971).

However, a defendant's waiver of counsel must be a clear and unequivocal expression to the trial court that he wants to represent himself. *People v. Mayo*, 198 Ill. 2d 530, 538, 764 N.E.2d 525, 530 (2002). "The purpose of requiring that a criminal defendant make an

'unequivocal' request to waive counsel is to: (1) prevent the defendant from appealing the denial of his right to self-representation or the denial of his right to counsel, and (2) prevent the defendant from manipulating or abusing the system by going back and forth between his request for counsel and his wish to proceed *pro se.*" *Mayo*, 198 Ill. 2d at 538, 764 N.E.2d at 530.

If a defendant seeks to waive his constitutional right to counsel, the trial court must not only determine that the defendant is competent to stand trial but also satisfy itself that his waiver is knowing and voluntary. *People v. Lego*, 168 Ill. 2d 561, 564, 660 N.E.2d 971, 973 (1995). "Although a court may consider a defendant's decision to represent himself unwise, if his decision is freely, knowingly, and intelligently made, it must be accepted out of ' "that respect for the individual[,] which is the lifeblood of the law." ' " *Lego*, 168 Ill. 2d at 563-64, 660 N.E.2d at 973, quoting *People v. Silagy*, 101 Ill. 2d 147, 179-80, 461 N.E.2d 415, 431 (1984), quoting *Illinois v. Allen*, 397 U.S. 337, 350-51, 25 L. Ed. 2d 353, 363, 90 S. Ct. 1057, 1064 (1970).

In this case, defendant's only statement to the trial court concerning his constitutional right of self-representation occurred during the morning of his December 20, 2005, pretrial hearing, when he inquired whether he could exercise that right after informing the court that he had not been appointed new counsel. In response, the court, noting that defendant was upset because he felt he was being "railroaded" and the judicial system had treated him unfairly, (1) stated that it would take steps to see that he had new counsel that same day, (2) recommended that defendant confer with his appointed counsel before making a formal request to waive counsel, and (3) informed defendant that if he still desired to waive counsel after he conferred with his newly appointed counsel, it would grant his request. Later that same day, the court (1) noted that Tibbs would be representing defendant and (2) restated (a) its recommendation that defendant confer with Tibbs before deciding whether to waive counsel and (b) that if defendant persisted in waiving counsel, the court would grant his request.

The record shows that defendant (1) did not make a clear and unequivocal request to waive counsel at his December 2005 pretrial hearing but, instead, merely inquired whether the trial court would grant such a request, given that defendant was frustrated with Rueter's failure to disclose his conflict of interest in a timely manner; (2) did not thereafter even raise the issue of his waiving counsel although he appeared before the court with Tibbs at four pretrial hearings over the four-month period following his December 2005 pretrial hearing; and (3) did not object to Tibbs' representing him at his April 2006 jury

trial. Thus, contrary to defendant's contention, the court did not deny him his sixth amendment right to self-representation.

As this court has previously noted, although a defendant has the constitutional right to self-representation, a trial court has the discretion to admonish him that such a course of action is "universally viewed as unwise," given the highly technical rules governing the conduct of a trial. *People v. Williams*, 277 Ill. App. 3d 1053, 1058, 661 N.E.2d 1186, 1190 (1996). Thus, provided a court informs a defendant that he ultimately may exercise his constitutional right to waive counsel—as the court did in this case—it is not required to immediately act upon a defendant's mere inquiry regarding whether he can exercise that right, especially when that inquiry may be the result of frustration or exasperation. See *Mayo*, 198 Ill. 2d at 538, 764 N.E.2d at 530 (a trial court must indulge every reasonable presumption against the waiver of a defendant's right to counsel); see also *People v. Burton*, 184 Ill. 2d 1, 23, 703 N.E.2d 49, 60 (1998) ("Even if a defendant gives some indication that he wants to proceed *pro se*, he may later acquiesce in representation by counsel"). Because a defendant's decision to waive counsel is so important and potentially devastating to his right to a fair trial, a court is entirely justified to delay acting upon the defendant's stated desire to waive counsel to ensure that the defendant's decision is made only after careful consideration and the defendant's opportunity to consult with counsel, family, or others whose advice he values.

Here, the trial court was well within its discretion to require defendant to consult with his new attorney before considering his request to exercise his right to self-representation. The court's actions were entirely appropriate and consistent with its obligation to ensure that a defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that ' "he knows what he is doing and his choice is made with eyes open." ' " *Lego*, 168 Ill. 2d at 564, 660 N.E.2d at 973, quoting *Faretta*, 422 U.S. at 835, 45 L. Ed. 2d at 581-82, 95 S. Ct. at 2541, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 87 L. Ed. 268, 275, 63 S. Ct. 236, 242 (1942). See *Ward*, 208 Ill. App. 3d at 1081-82, 567 N.E.2d at 647-48 (where this court recommended 10 admonishments that a trial court should give—in addition to those mandated by Supreme Court Rule 401 (134 Ill. 2d R. 401)—before it grants a defendant's request to waive counsel).

Accordingly, because we have concluded that defendant's *pro se* petition for postconviction relief failed to state the gist of a constitutional claim, it was properly dismissed by the trial court as frivolous and patently without merit.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

McCULLOUGH, P.J., and MYERSCOUGH, J., concur.