# Illinois Official Reports

## Appellate Court

---

**People v. Rodriguez, 2019 IL App (1st) 151938-B**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUAN RODRIGUEZ, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-1938 |
| Filed | March 26, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-17332(01); the Hon. Lauren Ediden, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Michael Gentithes, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Veronica Calderon Malavia, and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Pucinski and Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1	Following a 2013 discharge hearing, defendant Juan Rodriguez was found *not* not guilty of aggravated criminal sexual assault on the basis of unfitness. The trial court held that Rodriguez was not required to register pursuant to the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2014)) because he was incapable of understanding the registration requirements, but on appeal, we reversed. *People v. Rodriguez*, 2014 IL App (1st) 141255-U.

¶ 2	On remand, the trial court ordered Rodriguez to register, and he appealed that ruling challenging the constitutionality of SORA both on its face and as applied to him. We affirmed (*People v. Rodriguez*, 2018 IL App (1st) 151938), and Rodriguez petitioned for leave to appeal to the supreme court. In November 2018, the Illinois Supreme Court denied Rodriguez's petition for leave to appeal but issued a supervisory order directing us to vacate our January 2018 judgment and reconsider our decision in light of *People v. Bingham*, 2018 IL 122008. In accordance with the supreme court's direction, we vacate our prior judgment and reconsider in light of *Bingham* to determine whether a different result is warranted. Finding *Bingham* inapposite, we again affirm.

¶ 3	BACKGROUND

¶ 4	The facts of this case were set forth in detail in our order of December 30, 2014, *Rodriguez*, 2014 IL App (1st) 141255-U, ¶¶ 4-17, and we describe here only those proceedings that occurred following remand to the trial court.

¶ 5	On April 16, 2015, the trial court held a hearing to notify Rodriguez, who was represented by counsel, of his obligation to register under SORA. The State read the registration requirements to Rodriguez on the record, and they were translated into Spanish. But when Rodriguez was asked to sign a document stating that he understood the registration requirements, he repeatedly stated, "I don't understand what is this. I don't know what this is." In response to his counsel's objection that Rodriguez was incapable of understanding what was required of him, the State struck the language indicating otherwise, but Rodriguez persisted in his refusal to sign. The trial court then ordered the State to indicate on the form that it was "read and translated in open court," that Rodriguez was present with his attorney and a translator, and that he refused to sign. The court stated on the record that Rodriguez must register under SORA within three days. This appeal follows.

¶ 6	ANALYSIS

¶ 7	The sole issue on appeal is the constitutionality of subjecting unfit defendants found *not* not guilty of sexual assault to SORA's "statutory scheme," which, according to Rodriguez, encompasses the duty to register (730 ILCS 150/3 (West 2014)), the penalty for noncompliance with the registration requirements and the failure to register (*id.* §§ 7, 10), the limitations on a sex offender's residence and presence in certain locations (720 ILCS 5/11-9.3, 11-9.4-1 (West 2014)), the requirement that a sex offender must renew his driver's license yearly (730 ILCS 5/5-5-3(*o*) (West 2014)), and the prohibition on name changes for sex offenders (735 ILCS 5/21-101 (West 2014)).

¶ 8    In *Bingham*, the defendant argued before the supreme court that he was unconstitutionally subject to the registration requirement of SORA based on his conviction for felony theft. 2018 IL 122008, ¶ 14. The State contended that the court had no power on direct appeal to relieve defendant of his registration obligation when that obligation was not imposed by the trial court and was not related to his reasons for conviction or sentence in that court. *Id.* ¶ 15. The supreme court, relying on Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), agreed. *Bingham*, 2018 IL 122008, ¶¶ 15-16. Pursuant to Rule 615(b), a reviewing court may (1) reverse, affirm, or modify the judgment or order from which the appeal is taken; (2) set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken; (3) reduce the degree of offense of which the appellant was convicted; (4) reduce the punishment imposed by the trial court; or (5) order a new trial. Ill. S. Ct. R. 615(b) (eff. Jan. 1, 1967).

¶ 9    Because the reviewing court in *Bingham* was not asked to exercise any of those delineated powers with respect to the defendant's argument regarding the constitutionality of SORA, the supreme court concluded that it did not have jurisdiction over the defendant's appeal. *Bingham*, 2018 IL 122008, ¶ 17. The court's decision rested in large part on the fact that "[t]he requirement that defendant register as a sex offender is not encompassed within the judgment or any order of the trial court," and so did not fall within the ambit of Rule 615(b)(1). *Id.* The court suggested that constitutional challenges to SORA could be mounted in one of two ways: "(1) through a direct appeal from a case finding a defendant guilty of violating the regulation he attempts to challenge as unconstitutional, such as the sex offender registration law [citation], or (2) by filing a civil suit seeking a declaration of unconstitutionality and relief from the classification as well as the burdens of sex offender registration." *Id.* ¶ 21.

¶ 10    What distinguishes this case from *Bingham* is that following the hearing on April 16, 2015, the court did order Rodriguez to register under SORA within three days (and it was this order from which Rodriguez appealed). Unlike *Bingham*, in which the requirement that the defendant register as a sex offender arose by operation of law and was not reflected in either the court's written or oral judgment (*id.* ¶¶ 9-10), here, the court explicitly made an oral pronouncement that Rodriguez must register as a sex offender. Thus, we may reach the merits of Rodriguez's constitutional challenge pursuant to Rule 615(b)(1), allowing us to "reverse, affirm, or modify the judgment or order from which the appeal is taken." Ill. S. Ct. R. 615(b)(1) (eff. Jan. 1, 1967). Stated differently, this case presents a third avenue for a constitutional challenge to the act aside from the two suggested by the supreme court.

¶ 11    Before turning to the merits, two additional preliminary matters require our attention. First, we address the State's argument that the law of the case doctrine bars Rodriguez's constitutional challenge to SORA. The State contends that we decided this issue in our 2014 order holding that Rodriguez was required to register as a sex offender. But contrary to the State's assertion, our holding did not rest on constitutional grounds. Rather, we relied on *People v. Cardona*, 2013 IL 114076, and engaged in statutory interpretation to conclude that, notwithstanding that he was found *not* not guilty of committing a sex offense, Rodriguez met the statutory definition of a sex offender and, as such, was required to register under SORA. *Rodriguez*, 2014 IL App (1st) 141255-U, ¶ 25. Because we did not rule on the constitutionality of the SORA statutory scheme, the law of the case does not preclude consideration of Rodriguez's constitutional challenge in this appeal.

¶ 12	Next, we turn to the issue of standing. The State contends that Rodriguez lacks standing to mount a challenge to all but section 3 of SORA, setting forth the registration requirements. In order to have standing to challenge the constitutionality of a statute, a person must have suffered or be in imminent danger of suffering a direct injury as a result of the statute's enforcement. *People v. Greco*, 204 Ill. 2d 400, 409 (2003). In other words, a party may not raise a constitutional challenge to a statute that does not affect him or her. *In re Veronica C.*, 239 Ill. 2d 134, 147 (2010).

¶ 13	We have previously considered and rejected the State's argument that a defendant sex offender lacks standing to challenge the limitations on presence and residence applicable to him as well as the other civil consequences he faces as a result of his sex offender status (yearly renewal of his driver's license and inability to change his name). See *People v. Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 40-43; *People v. Pollard*, 2016 IL App (5th) 130514, ¶¶ 26-27. In *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 41, we explained that the restrictions on residency, presence, and name changes, as well as the requirement to renew one's driver's license annually, are all automatically applicable to a defendant classified as a sex offender. Merely because a defendant does not allege that he wishes to live in a certain prohibited location or change his name does not mean that he is not affected by these laws. *Id.* ¶ 42. Therefore, Rodriguez has standing to challenge these provisions.

¶ 14	We likewise reject the State's argument that Rodriguez lacks standing to challenge section 10 of SORA (prescribing the penalty for failure to register). In reaching this conclusion, we acknowledge that this court previously held that a juvenile respondent lacked standing to challenge the constitutionality of this section because he was not in danger of suffering a direct injury as a result of that provision where he had not failed to comply with his registration requirements or been charged with a felony. *In re A.C.*, 2016 IL App (1st) 153047, ¶ 24. Similarly, Rodriguez has not alleged that he failed to register or that he has been charged with violating SORA's requirements. However, Rodriguez is nevertheless affected by section 10. After all, he would have no incentive to comply with SORA in the absence of the penalty provision. See *id.* ¶¶ 85-86 (Gordon, J., concurring in part and dissenting in part). For that reason, if Rodriguez has standing to challenge the other provisions of SORA on their face as punitive in nature, he has standing to challenge the penalty provision as well. *Id.* ¶ 85

¶ 15	*Bingham* supports this conclusion. There, the supreme court held that a constitutional challenge to SORA could be raised by way of a declaratory judgment action. *Bingham*, 2018 IL 122008, ¶ 21. Such a proceeding would address the precise claim here, *i.e.*, that the totality of SORA's provisions constitute punishment. Because a declaratory judgment action can only be mounted by a litigant with standing, it follows that a defendant also has standing to mount a similar facial constitutional challenge to the cumulative effect of SORA's provisions on direct appeal from an order requiring him to register under SORA.

¶ 16	Turning to the merits of Rodriguez's claims, we review a challenge to the constitutionality of a statute *de novo*. *People v. Mosley*, 2015 IL 115872, ¶ 22. All statutes are presumed constitutional, and the party bringing a constitutional challenge bears the burden of rebutting that presumption. *People v. Hollins*, 2012 IL 112754, ¶ 13. If reasonably possible, we must construe the statute to affirm its constitutionality and validity. *Id.*

¶ 17	When confronted with a claim that a statute violates the constitutional guarantee of due process, the first step is to determine the nature of the right purportedly infringed by the

statute. *People v. Cornelius*, 213 Ill. 2d 178, 203 (2004). Here, Rodriguez contends that the statute infringes on an unfit defendant's fundamental right to be free from punishment and, as such, is subject to strict scrutiny. See *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 307 (2008) (statutes implicating fundamental rights are reviewed under strict scrutiny).

¶ 18    Before considering the merits of this claim, we must first determine whether the SORA statutory scheme constitutes "punishment" at all. Our supreme court has answered that question in the negative on several occasions, most recently in 2013. *Cardona*, 2013 IL 114076, ¶ 24; see also *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 203 (2009); *People v. Malchow*, 193 Ill. 2d 413, 424 (2000). Rodriguez acknowledges these holdings but maintains that they are outdated, as the registration requirements and limitations imposed on sex offenders have become more onerous since these cases were decided. Specifically, today's SORA (1) increases the number of agencies with which a sex offender must register to include not only police departments in the county where the offender resides but also in the county where he works or attends school (730 ILCS 150/3(a), (d) (West 2014)); (2) increases the amount of information a sex offender must provide when registering to include a photograph, telephone number, place of employment, employer's telephone number, school attended, information about his qualifying offense, information about identifying marks on his body, license plate numbers for vehicles registered in his name, and all e-mail addresses, Internet identities, and Internet sites he maintains (*id.* § 3(a)); (3) provides less time to report changes in this information (from 10 days to 3 days) (compare *id.* § 3(b), with 730 ILCS 150/3(b) (West 1998)); (4) increases how often a sex offender must register and how often he must report in person (730 ILCS 150/6 (West 2014)); (5) increases the initial and annual registration fees (*id.* § 3(c)(6)); (6) imposes harsher penalties for noncompliance with registration requirements (*id.* § 10); and (7) imposes greater restrictions on where a sex offender can live or be present (720 ILCS 5/11-9.3, 11-9.4-1 (West 2014)).

¶ 19    Determining whether a law imposes punishment turns first on whether the legislature intended the law to be punitive or to establish civil consequences. *Smith v. Doe*, 538 U.S. 84, 92 (2003); *Cornelius*, 213 Ill. 2d at 208. Rodriguez does not dispute that, with regard to SORA, the legislative intent was not to impose additional punishment on sex offenders. However, even when the legislature intends to enact a civil regulatory scheme, the law may nevertheless constitute punishment if "the clearest proof" shows that it is punitive in purpose or effect. *Malchow*, 193 Ill. 2d at 421 (citing *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)); *People v. Fredericks*, 2014 IL App (1st) 122122, ¶ 56.

¶ 20    When determining whether an ostensibly civil statute has a punitive effect, Illinois courts have applied the seven factor test first set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), which considers whether (1) the sanction involves an affirmative disability or restraint, (2) the sanction has historically been regarded as punishment, (3) the sanction is applicable only upon a finding of *scienter*, (4) operation of the sanction promotes retribution and deterrence, (5) the behavior to which the sanction applies is already a crime, (6) an alternative purpose to which the sanction may rationally be connected is assignable to it, and (7) the sanction appears excessive in relation to the alternative purpose assigned. *Malchow*, 193 Ill. 2d at 421.

¶ 21    We previously applied the *Mendoza-Martinez* factors to the 2012 SORA in *Fredericks*, 2014 IL App (1st) 122122, ¶ 58, and the 2014 SORA and Sex Offender Community

Notification Law (Notification Law) (730 ILCS 152/101 *et seq.* (West 2014)) in *A.C.*, 2016 IL App (1st) 153047, ¶¶ 77-78, and determined that the changes to those statutes since *Malchow* did not render the statutes punitive. We reach the same conclusion today.

¶ 22    In the context of sex offender registration statutes, factors three and five are of little weight (see *Smith*, 538 U.S. at 105), and we instead focus on the remaining five factors.

¶ 23    With regard to the first factor, Rodriguez contends that the requirement of in-person registration amounts to an affirmative restraint. But the 1987 Habitual Child Sex Offender Registration Act (Ill. Rev. Stat. 1987, ch. 38, ¶ 221 *et seq.*) required registration, and the supreme court nevertheless held that the statute did not amount to a restraint of defendant's liberty or property. *People v. Adams*, 144 Ill. 2d 381, 387 (1991). To be sure, the 2014 SORA imposes a shortened time period for complying with the in-person registration requirements in certain circumstances, but Rodriguez does not explain how this operates as a restraint on his movement.

¶ 24    Turning to the second factor, the act of appearing in person and registering is not traditionally regarded as punishment in the same way as mandatory supervised release or parole, as Rodriguez contends. Indeed, the Supreme Court rejected this identical argument in *Smith*, when it evaluated Alaska's SORA. In *Smith*, the Court explained that "[p]robation and supervised release entail a series of mandatory conditions and allow the supervising officer to seek the revocation of probation or release in case of infraction," while under Alaska's SORA, offenders were able to move where they wished without supervision. *Smith*, 538 U.S. at 101. Illinois's SORA, like Alaska's, does not require offenders to seek permission to move about the state, though it requires offenders to inform authorities about their movements. Nor do Illinois police have the authority to revoke an offender's registration as they do for parolees. Because the registration requirement is sufficiently dissimilar to parole, we cannot say it has historically been regarded as punishment.

¶ 25    Nor does the SORA scheme promote retribution or deterrence, the focus of *Mendoza-Martinez*'s fourth factor. Rather, it is a "regulatory scheme designed to foster public safety." *Cardona*, 2013 IL 114076, ¶ 24. Certainly, SORA can also deter crime, but this is a collateral effect of the registration scheme that does not detract from the fact that the primary purpose of SORA is to protect the public.

¶ 26    And because the purpose of SORA is to protect the public, the sixth *Mendoza-Martinez* factor—whether an alternative purpose to which the sanction may rationally be connected is assignable to it—also weighs in favor of finding that the SORA statutory scheme is nonpunitive.

¶ 27    Finally, Rodriguez contends that because SORA does not allow a mechanism by which an offender can petition for relief from registering when he is no longer a danger, it is disproportionate to the need to protect the public—*Mendoza-Martinez*'s seventh factor. But the 1998 SORA likewise did not provide for a procedure that would allow an offender to obtain relief from the registration requirements, and the supreme court nevertheless found it proportional to the purpose of protecting the public. *Id.* Moreover, today's SORA in fact has a termination provision for juveniles who are adjudicated guilty of sex offenses who pose no risk of harm. See 730 ILCS 150/3-5 (West 2014). Thus, the legislature has, in fact, considered which sex offenders should be afforded the ability to seek termination of registration requirements and has limited that relief to those who were juveniles when adjudicated. See *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 367

(1985) (legislature "may choose to address itself to what it perceives to be the most acute need"). For these reasons, we conclude that while the SORA statutory scheme has become more onerous since 1998, it remains nonpunitive in effect under *Mendoza-Martinez*.

¶ 28    Rodriguez's arguments to the contrary are premised on cases from outside Illinois. But where there is Illinois law on point, we need not, and should not, look to cases from other jurisdictions. *People v. Qurash*, 2017 IL App (1st) 143412, ¶ 34. In any event, the non-Illinois cases to which Rodriguez cites are distinguishable. For example, Rodriguez relies on *Does #1-5 v. Snyder*, 834 F.3d 696, 705-06 (6th Cir. 2016), where the Sixth Circuit found that Michigan's sex offender registration scheme, although ostensibly a civil regulatory statute, had punitive effects. But as we found in *People v. Parker*, 2016 IL App (1st) 141597, ¶¶ 64-65, not only is the Michigan scheme distinguishable from the Illinois version of SORA, but the civil plaintiffs in *Does* also supported their claims with an "extensive demonstration" that included maps depicting the effects of the Michigan law's geographical restrictions on sex offender presence and residence. Rodriguez, just as the defendant in *Parker*, has not presented any comparable evidence of the Illinois's scheme's punitive effects.

¶ 29    The remaining cases Rodriguez relies on from Alaska, Oklahoma, Indiana, and Maryland are likewise inapposite, as those states, unlike Illinois, have not adopted the Supreme Court's "clearest proof" standard in evaluating whether a law has a punitive effect and instead employ a less demanding standard of proof. See *Doe v. State*, 189 P.3d 999, 1008 n.62 (Alaska 2008) (rejecting Supreme Court's heightened standard of "clearest proof" in evaluating whether a law is punitive in effect); *Gonzalez v. State*, 980 N.E.2d 312, 316 n.3 (Ind. 2013) (same); *Starkey v. Oklahoma Department of Corrections*, 2013 OK 43, ¶¶ 44-45, 305 P.3d 1004 (undertaking neutral evaluation of act's purpose and effects to determine whether it has punitive effects).

¶ 30    Because we have determined that the burdens imposed on those subject to SORA's statutory scheme are not punitive so as to override the legislature's intent to create a civil sanction, Rodriguez's argument that the scheme violates his fundamental right to be free from punishment necessarily fails. But this is not the end of the analysis. Rodriguez's failure to identify a fundamental right merely results in the application of rational basis review to the SORA statutory scheme. See, *e.g.*, *In re J.W.*, 204 Ill. 2d 50, 67 (2003) (finding that SORA did not implicate fundamental rights and applying rational basis review); *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 81 (same).

¶ 31    Importantly, rational basis review is highly deferential to the legislature; it is not concerned with the wisdom of the statute or whether it is the best means to achieve the desired outcome. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 125-26 (2004). Rather, "[s]o long as there is a conceivable basis for finding the statute rationally related to a legitimate state interest, the law must be upheld." *Id.* at 126.

¶ 32    Rodriguez maintains that SORA fails rational basis review as it is both overinclusive and underinclusive. Specifically, he argues that the law is overinclusive because it encompasses offenders in its broad net who are unlikely to recidivate and underinclusive because it allows those who pose a greater risk of recidivism to escape its reach by pleading guilty to lesser offenses. But under rational basis review, "a statute 'is not fatally infirm merely because it may be somewhat underinclusive or overinclusive.' " *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 83 (quoting *Maddux v. Blagojevich*, 233 Ill. 2d 508, 547 (2009)). Here, despite

being in certain ways under- or overinclusive, the SORA statutory scheme is rationally related to protecting the public from sex offenders, which is a legitimate state interest.

¶ 33 SORA enables law enforcement to monitor the whereabouts of sex offenders. And "by keeping sex offenders who have committed offenses against children away from areas where children are present (*e.g.*, school property and parks) and out of professions where they could come in contact with children (*e.g.*, driving an ice cream truck, being a shopping-mall Santa Claus) or vulnerable people (*e.g.*, driving an emergency services vehicle)," the legislature rationally limited the opportunities sex offenders have to reoffend. *Id.* ¶ 84; see also *Pollard*, 2016 IL App (5th) 130514, ¶¶ 41-43. Thus, although the scheme may be imperfect, it is rationally related to the legitimate state interest of protecting the public from sex offenders and not unconstitutional on its face.

¶ 34 Rodriguez's argument that the statutory scheme is unconstitutional as applied to him fares no better. As a general rule, an as-applied constitutional challenge cannot be raised for the first time in a reviewing court in a collateral proceeding. See *Bingham*, 2018 IL 122008, ¶ 22. This is because the record below is usually insufficiently developed as to the unique facts and circumstances supporting the challenge. *Id.* Here, however, the unique procedural posture of this case has provided us a factual record enabling us to adjudicate Rodriguez's as-applied claim.

¶ 35 Rodriguez maintains that his "cognitive and physical defects" "make reoffending next to impossible" and also make him unable to comprehend and comply with the SORA statutory scheme. But Rodriguez suffered from the same cognitive defects at the time he was charged with the offense that led to this proceeding; he has not claimed or proved the onset of any new defects that would prevent him from committing a similar offense in the future. And in our earlier decision we rejected Rodriguez's contention that he was incapable of understanding or complying with the registration requirements:

> "The evidence adduced during the discharge hearing demonstrates that Rodriguez has some level of cognitive functioning as was evident when he partially closed the apartment's blinds, presumptively to conceal his actions, made sexual advances to [K.J.] when no other adult was home, repeatedly pushed and restrained [K.J.] and had a condom in his pocket that he showed to K.J. and stated 'it's okay, I got protection.' Further, Rodriguez'[s] initial statement to Officer Domenech indicating, in an effort to deflect responsibility, that he only touched K.J. on her [shoulder] is indicative of his ability to appreciate that his actions were wrong. The evidence also reveals that Rodriguez had worked in a shop where his responsibilities included sweeping, putting on gloves, and gathering scrap metal and brake lining and putting them in a truck. Rodriguez was also responsible for his own personal hygiene, had the ability to clean, do laundry, pay bills, and received a high school degree from a school that specializes in teaching individuals with cognitive deficits." *Rodriguez*, 2014 IL App (1st) 141255-U, ¶ 26.

In light of this evidence, we concluded that Rodriguez was capable of complying with the registration requirements, and we decline to find otherwise today.

¶ 36                                    CONCLUSION

¶ 37        For these reasons, we affirm the constitutionality of the SORA statutory scheme both on its face and as applied to Rodriguez.

¶ 38        Affirmed.