2022 IL App (2d) 210734-U
No. 2-21-0734
Order filed November 23, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 00-CF 2476 |
| MAURICE WILSON, | ) ) ) | Honorable Joseph G. McGraw, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justice Hudson concurred in the judgment.
Justice McLaren specially concurred.

**ORDER**

¶ 1   *Held*:  Requirement that defendant register under the Sex Offender Registration Act was a collateral consequence of his child-pornography conviction and did not confer standing to seek postconviction relief.

¶ 2   Defendant, Maurice Wilson, appeals the judgment of the circuit court of Winnebago County denying him leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)).  Because defendant had completed his probation sentence before he filed his petition, he lacked standing to seek postconviction relief.  Thus, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The State charged defendant with two counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2000)) and one count of possession of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2000)).

¶ 5      On September 5, 2001, defendant pled guilty to possession of child pornography. The State agreed to dismiss the two remaining counts per a fully negotiated plea agreement. The parties further agreed that defendant would be sentenced to 30 months' probation and required to complete any sex offender assessments and treatment recommended by probation. The prosecutor added, "it would be a requirement that [defendant] register as a sex offender *pursuant to statute*." (Emphasis added.)

¶ 6      The factual basis for the plea established that on June 14, 2001, the victim, L.E., age 13, went to defendant's home to babysit his baby. Defendant was age 19. While L.E. was there, defendant showed her some pornography on his computer. Defendant told L.E. that some of the pictures showed people younger than her. Based on what L.E. reported to the police, they obtained defendant's computer hard drive. On the hard drive, the police "found a computer image of several minor children, obviously under the age of 17 years, engaged in sexual acts." Defendant provided the police a written statement "indicating that he found the picture on a website saying it was illegal pornography and downloaded it so he would know what was illegal and what was not." When the trial court asked defendant if he agreed with the factual basis for the guilty plea, he answered that he "want[ed] to get this over with." He added that the "child pornography was on the computer, yes, ma'am." When the court asked defendant if it was his computer, he responded, "Yes."

¶ 7       After admonishing defendant, the trial court accepted the guilty plea and sentenced defendant to 30 months' probation.  The court further ordered that defendant complete any assessments and treatment recommended by probation.  The court added that defendant was "to register as a sex offender."  The court then said it would read aloud from the sex offender notification form and that defendant should initial each statement if he understood it.  Among the sex offender registration requirements the court read were: (1) failure to comply with the provisions of the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2012)) would be a Class 4 felony and cause for revocation of probation, (2) the Illinois State Police would extend the registration term for 10 years for failure to comply with any provisions of the SORA, and (3) any person identified as a "sexual predator" would be required to register annually for the rest of that person's natural life.  Defendant acknowledged to the court that he understood each of the requirements as read to him.

¶ 8       The "Sex Offender Registration Act Notification Form" in the record has a bolded subheading: "Duty to Register.  Read Following to Offender and Offender Must Initial Each."  Under that subheading is a list of requirements, including: "Any person identified as a sexual predator must register every year for the period of their natural life."  Defendant's initials are next to that requirement and all the others.  His signature on the form indicates that he read, or had read to him, the requirements related to his duty to register.  The instructions for completing the form state, among other things, that a "[s]exual [p]redator" is defined as a sex offender convicted after June 30, 1999, of, among other offenses, section 11-20.1 of the Criminal Code of 1961 (see 720 ILCS 5/11-20.1 (West 2000)).  The instructions also define "[s]exually [d]angerous" and "[s]exually [v]iolent."  Finally, "[s]ex [o]ffender" is defined as a "Sex Offender registrant that does not fit the above definitions, but fits the criteria to register."

¶ 9      The trial court's written sentencing order provided, in pertinent part, that defendant was sentenced to 30 months' probation. Under the list of probation conditions, a box was checked next to the condition: "Register as a sex offender and comply with Sex Offender Registration Act 730 ILCS 150/1 *et seq.*" Defendant did not file a direct appeal.

¶ 10     On February 21, 2012, defendant filed a *pro se* motion "to request a status" as to whether, 10 years after his plea, he was still required to register annually as a sex offender. At the hearing on that motion, defendant explained that, at the guilty plea hearing, he was told that he would have to register for 10 years. Since 10 years had passed since his plea, he wished to know whether he was required to continue registering. The prosecutor responded that she did not know the required registration period for defendant's conviction when he pled guilty but noted that the legislature had since made registration a lifetime requirement that applied retroactively. In denying defendant's motion, the trial court explained that the State could apply the legislative change retroactively, because registration was a collateral consequence of his plea. Thus, the court had no authority to grant him the relief sought.

¶ 11     On February 13, 2015, defendant filed a *pro se* "Petition to Vacate Judgment." He cited therein section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2014)). Defendant alleged that his conviction should be vacated as void because the State failed to advise him at the guilty plea hearing that he would be registering as a sexual predator, with a lifetime duty to register, and not as a sex offender. The trial court granted the State's motion to quash service of process and dismissed the petition without prejudice to refiling.

¶ 12     On June 24, 2015, defendant filed a *pro se* "Petition to Vacate and/or Modify Conviction and Sentence." This petition, too, cited section 2-1401 of the Code. Defendant asked the trial court to vacate the requirement that he register as a sexual predator. In doing so, defendant alleged

that, when he pled guilty, he agreed only to a 10-year registration requirement as a sex offender. He argued that no one told him he was subject to a lifetime registration requirement as a sex offender. Thus, defendant claimed that his plea was involuntary.

¶ 13    On January 20, 2016, the State filed a motion to dismiss. The motion referred to defendant's petition as a section 2-1401 petition and relied on authority applicable to petitions filed under that section. In granting the motion to dismiss, the trial court noted that (1) there was no evidence of fraud or concealment, because defendant was advised when he pled guilty that he had to register, and (2) the specific length of the registration period was merely a collateral consequence of defendant's conviction. Thus, the court ruled that defendant was not entitled to any relief. Defendant did not appeal that decision.

¶ 14    On September 13, 2021, defendant filed *pro se* a "post-conviction petition" alleging his actual innocence. Defendant cited section 2-1401 and stated that the petition was his "second post-conviction petition." Defendant alleged that the State fraudulently concealed that the single image of child pornography cited in the factual basis was not "in a file readily accessible to the defendant" but, rather, was a cached file. Defendant asserted that a cached file, while arguably not constituting knowing possession of child pornography even at the time he pled guilty, was subsequently held by several Illinois decisions to be insufficient to support a conviction of child pornography. Defendant also claimed that his trial counsel was ineffective for "plac[ing] trust in the prosecutor and the police investigation team without giving an adversarial challenge to the evidence itself or the means by which it was obtained." Finally, defendant alleged that lifetime registration as a sexual predator was cruel and unusual punishment.

¶ 15    Attached to defendant's petition was a copy of a police report from the officer who searched defendant's computer. The officer stated that his search of defendant's hard drive revealed only one image he suspected was child pornography. That image was named "[***].jpg."

¶ 16    At a status hearing on defendant's petition, the trial court asked defendant if he had filed a prior postconviction petition. Defendant answered that he had. The court then advised defendant that he must first file a motion for leave to file a successive postconviction petition. The court then struck defendant's petition without prejudice to defendant filing a motion for leave to file, with his petition attached. Defendant acknowledged that he understood.

¶ 17    On November 1, 2021, defendant filed a *pro se* motion for leave to file a successive postconviction petition. As bases for filing a successive petition, he alleged that (1) he was actually innocent, (2) the State fraudulently concealed the true nature and location of the image found on his computer, and (3) his trial counsel was ineffective for failing to investigate the nature and location of the image.

¶ 18    The trial court issued a written decision denying defendant's motion for leave to file. In that order, the court found that defendant "acknowledge[d] he had previously filed a petition for post-conviction relief." The court then found, without elaboration, that defendant had failed to demonstrate grounds for filing a successive petition. Defendant, in turn, filed this timely appeal.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, defendant contends that (1) the trial court erred in requiring him to seek leave to file a successive postconviction petition, where he had not filed a prior petition, and (2) assuming the court was correct to require a motion for leave to file, defendant met the governing standard by alleging a colorable claim of actual innocence.

¶ 21    The State does not address the substance of either claim.  Instead, the State contends solely that defendant lacked standing to file a postconviction petition because he had completed his sentence and was no longer "imprisoned in the penitentiary" within the meaning of the Act.  See 725 ILCS 5/122-1(a) (West 2020) ("[a]ny person imprisoned in the penitentiary" may seek relief under the Act).  Defendant responds that, because the trial court made registration a component of his sentence and he is still required to register as a sexual predator, he remains "imprisoned" and thus has standing to file a postconviction petition.

¶ 22    Because it is dispositive, we first address the issue of standing.  A lack of standing is a proper basis for dismissal of a postconviction petition at the first stage of review.  *People v. Johnson*, 2021 IL 125738, ¶ 58.  Further, a reviewing court may affirm, on any basis in the record, the first-stage dismissal of a postconviction petition (*People v. Little*, 335 Ill. App. 3d 1046, 1051 (2003)) or the denial of a motion for leave to file a successive postconviction petition (*People v. Edwards*, 2022 IL App (5th) 190520-U, ¶ 16 (citing *People v. Johnson*, 208 Ill. 2d 118, 129 (2003)).  We review *de novo* the dismissal of a petition at the first stage (*People v. Edwards*, 197 Ill. 2d 239, 247 (2001)), as well as the denial of a motion for leave to file a successive petition (*People v. Edgeston*, 396 Ill. App. 3d 514, 518 (2009)).[1]

¶ 23    Proceedings under the Act implicate statutory standing principles.  *People v. Johnson*, 2021 IL 125738, ¶ 32.  The legislature created a right of action for postconviction relief under the Act ,

---

[1]We note that the trial court deemed defendant's petition a successive petition.  We need not decide whether that characterization was correct, however, because the issue of standing would be dispositive regardless of whether the court applied the standard for filing a successive petition or the standard for first-stage review.

providing that " '[a]ny person imprisoned in the penitentiary may institute a proceeding under this Article.' " *Johnson*, 2021 IL 125738, ¶ 32 (quoting 725 ILCS 5/122-1(a) (West 2018)). Therefore, a defendant's standing under the Act depends on whether he fulfilled the condition of being "imprisoned in the penitentiary" when he instituted the postconviction proceeding. *Johnson*, 2021 IL 125738, ¶ 32. The term "standing" does not appear in the Act; nonetheless, because being "imprisoned in the penitentiary" is a statutory condition to petitioning for relief under the Act, a defendant loses standing to seek such relief once he has fully discharged his sentence for the challenged conviction. *Johnson*, 2021 125738, ¶ 37.

¶ 24    Additionally, direct consequences of a conviction confer standing under the Act, whereas collateral consequences do not. *Johnson*, 2021 IL 125738, ¶ 67. Direct consequences of a conviction are those that relate to the sentence imposed. *Johnson*, 2021 IL 125738, ¶ 67. On the other hand, a collateral consequence is "an effect upon a defendant that the circuit court has no authority to impose, and it results from an action that may or may not be taken by an agency that the trial court does not control." *Johnson*, 2021 IL 125738, ¶ 66. Collateral consequences are not related to the length or nature of the sentence imposed. *Johnson*, 2021 IL 125738, ¶ 67.

¶ 25    Registration requirements are generally considered collateral to a sentence and thus do not create standing under the Act. *Johnson*, 2021 IL 125738, ¶¶ 66, 69. In *Johnson*, the supreme court held that the defendant's duty to register under the Child Murderer and Violent Offender Against Youth Registration Act (730 ILCS 154/1 *et seq.* (West 2006)), triggered by an unlawful restraint conviction, was a collateral consequence because it was not encompassed within the judgment or order of the court. *Johnson*, 2021 IL 125738, ¶ 69 (citing *People v. Bingham*, 2018 IL 122008, ¶¶ 10, 17). More importantly, it is equally clear that registration obligations arising under the SORA are collateral consequences that do not confer standing to challenge, via the Act, the

underlying conviction. *Johnson*, 125738, ¶ 69 (citing *People v. Stavenger*, 2015 IL App (2d) 140885, ¶ 12).

¶ 26    Here, defendant acknowledges that the requirement to register as a sex offender under the SORA is ordinarily a collateral consequence of a conviction and does not create standing under the Act. Nonetheless, he asserts that the registration requirement here was a direct consequence of his conviction because it was incorporated into his plea terms. We disagree.

¶ 27    The duty to register as a sex offender arises solely under the SORA. See 730 ILCS 150/3(a) (West 2020). Indeed, the duty to register exists independently of any trial court authority to impose a sentence. Put another way, the duty to register is triggered automatically by a defendant's conviction for any of the qualifying offenses under the SORA. Because the duty to register arises by operation of law once a trial court enters a conviction for a qualifying offense, the court has no control over that duty. See *Johnson*, 2021 IL 125738, ¶ 66. That being the case, when the court accepted defendant's guilty plea and entered a conviction thereon, defendant was obligated to register as a sex offender irrespective of anything the court said or did. More importantly, even if the court's oral pronouncement and written sentencing order stated that defendant was required to register, such remarks would not convert the automatic statutory obligation to register into a judicially imposed obligation.

¶ 28    Further, defendant did not convert his SORA obligation to register into a component of his conviction and sentence by merely agreeing to register as part of his plea agreement. It is well established that plea agreements are comparable to enforceable contracts and that courts should apply contract-law principles in appropriate circumstances. *People v. Donelson*, 2013 IL 113603, ¶ 18. Any plea agreement has a component representing the benefit of the bargain accruing to the State. *Donelson*, 2013 IL 113603, ¶ 19. Here, defendant's agreement to register as a sex offender

did not provide any enforceable benefit to the State, as he was otherwise obligated to register once convicted upon his guilty plea. Further, at the guilty plea hearing, when discussing the terms of the plea agreement, the prosecutor stated that defendant would be required to register as a sex offender "*pursuant to statute*." (Emphasis added.) The prosecutor's statement clearly recognized the independent statutory requirement under the SORA that, by pleading guilty to a qualifying offense, defendant would be obligated to register as a sex offender. Because the obligation to register arose under the SORA and was triggered by pleading guilty to a qualifying offense, defendant's agreement to register added nothing material to the plea agreement. Accordingly, had defendant failed to register under—or otherwise not complied with—the SORA, the State would have been unable to seek rescission of the plea agreement on that basis. Because registering as a sex offender was not a material term of the plea agreement, it was not encompassed as part of the conviction entered, or sentence imposed, thereon.

¶ 29    Defendant relies on *People v. Rodriguez*, 2019 IL App (1st) 151938-B, in arguing that a court order for a defendant to register as a sex offender gives the defendant standing under the Act to challenge his underlying conviction. That reliance is clearly misplaced. In *Rodriguez*, the trial court, after finding defendant *not* not guilty of aggravated criminal sexual assault, ordered defendant to register under the SORA. *Rodriguez*, 2019 IL App (1st) 151938-B, ¶ 1. On appeal, the defendant challenged the constitutionality of subjecting a defendant found *not* not guilty of sexual assault to the SORA's registration requirements. *Rodriguez*, 2019 IL App (1st) 151938-B, ¶ 7. As a preliminary matter, the court considered whether it would even have authority under Illinois Supreme Court Rule 615(b)(1) (eff. Jan. 1, 1967) to relieve the defendant of the registration requirement if it accepted the defendant's constitutional challenge. See *id.* (permitting the reviewing court to "reverse, affirm, or modify the judgment or order from which the appeal is

taken"). The court acknowledged that the defendant was neither appealing a criminal finding that he had violated the SORA nor appealing from a civil challenge to the SORA. *Rodriguez*, 2019 IL App (1st) 151938-B, ¶ 9 (citing *Bingham*, 2018 IL 122008, ¶ 21). Nonetheless, the court held that it could provide relief under Rule 615(b)(1) because the trial court had expressly ordered defendant to register under the SORA. *Rodriguez*, 2019 IL App (1st) 151938-B, ¶ 10.

¶ 30 *Rodriguez* is distinguishable. The issue there was whether the reviewing court could effectuate relief under Rule 615(b)(1) if it decided that the registration requirement was unconstitutional. The court concluded that relief would be possible because the trial court's order expressly required defendant to register. However, *Rodriguez* simply did not consider whether that court order gave the defendant standing to bring a postconviction petition under the Act. Further, the defendant in *Rodriguez*, unlike defendant here, did not seek to challenge his underlying conviction. Thus, *Rodriguez* does not support defendant's position.

¶ 31 To summarize, because the obligation to register as a sex offender arose entirely from defendant's conviction of a qualifying offense under the SORA and not from the trial court's sentencing authority, defendant no longer had standing under the Act once he completed his probation sentence. Lack of standing would be a proper basis for either dismissing defendant's petition at the first stage of the postconviction proceeding (see *Little*, 335 Ill. App. 3d at 1050) or denying him leave to file a successive postconviction petition (see *Edgeston*, 396 Ill. App. 3d at 518). Thus, as discussed, we need not decide whether the trial court erred in requiring defendant to seek leave to file a successive postconviction petition.

¶ 32                                    III. CONCLUSION

¶ 33 For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 34 Affirmed.

¶ 35    JUSTICE McLAREN, specially concurring:

¶ 36    I specially concur because I believe that the presentation of this case needs to be understood as an inappropriate attempt to obtain a remedy to correct an alleged wrong. Defendant argued that, in addition to having standing, he is innocent based on *People v. Josephitis*, 394 Ill. App. 3d 293, 306 (2009).

¶ 37    In *Josephitis*, the court stated that additional evidence is required to prove possession besides the mere fact that the image is in the computer's cache. The holding was when pornography is in a particular place on a computer such that a normal defendant would not have knowledge of the pornography, then, lacking such knowledge, he would not have the intent to possess the pornography. 394 Ill. App. at 306.

¶ 38    The problem with this argument here is that regardless of the location of the pornography on the computer, defendant showed the pornographic image to his babysitter. That simple fact establishes beyond a reasonable doubt that defendant had the necessary knowledge and intent because he showed the pornography to a third person. I submit that his claim of innocence patently lacks merit. Unlike *Josephitis*, defendant in this case showed beyond any doubt his knowledge of the pornography on the computer and failed to remove it.

¶ 39    That being said, I submit that the better approach to seek relief would have been in declaratory judgment where it could be argued that the registration act should not be applied to him if he were to prove his innocence.

> "(a) No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination,

at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation *** and a declaration of the rights of the parties interested." 735 ILCS 5/2-701(a) (West 2000).

A declaratory judgment "may be obtained by means of a pleading seeking that relief alone, or as incident to or part of a complaint, counterclaim or other pleading seeking other relief as well." *Id.* at 5/2-701(b)); *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003).

¶ 40 The majority disposition, though plainly correct, does not fully address whether or not there is an effective cause of action for which defendant has standing. I submit he may have standing in declaratory judgment via the allegations of the petition, but not under the parameters of the Post-Conviction Hearing Act per the majority's analysis.

¶ 41 The affirmance of the trial court's judgment is bolstered by the fact that defendant's underlying claim of innocence fails.