2022 IL App (1st) 192067-U

FIRST DISTRICT,
FIRST DIVISION
June 27, 2022

No. 1-19-2067

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 16 CR 8210 |
| | ) | |
| KLEARENCE RATLIFF, | ) | Honorable |
| | ) | Patrick Coughlin, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for predatory criminal sexual assault is affirmed where the other-crimes evidence was properly admitted and any error in instructing the jury did not rise to the level of plain error. This court lacks jurisdiction to consider defendant's constitutional challenge to the Illinois statutory requirements for convicted sex offenders.

¶ 2    Following a jury trial, defendant Klearence Ratliff was convicted of two counts of predatory criminal sexual assault of the seven-year-old victim and sentenced to a total of 14 years' incarceration. On appeal, defendant argues that (1) the trial court erred in admitting other-crimes evidence; (2) the trial court erred in failing to instruct the jury as required by section 115-

10(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10(c) (West 2016)); and (3) the requirements of the Sex Offender Registration Act (SORA) (730 ILCS 150/2(B), 150/3(a) (West 2018)) are unconstitutional. For the reasons that follow, we affirm defendant's conviction and dismiss his SORA claim.

¶ 3                                BACKGROUND

¶ 4        Defendant was charged with predatory criminal sexual assault based on the allegation that he penetrated then seven-year-old I.W.'s vagina and anus with his finger. Prior to trial, the State moved to admit evidence of other crimes by defendant. The State argued such evidence was admissible to show propensity under section 115-7.3 of the Code (725 ILCS 115-7.3 (West 2016)) and to prove intent, absence of mistake or misunderstanding, or *modus operandi*. The trial court granted the motion, allowing evidence that defendant touched the vagina of A.S., who was between the ages of 10 and 11 at the time, over her clothing, prior to assaulting I.W.

¶ 5        Pursuant to section 115-10 of the Code, the State also moved to introduce the substance of I.W.'s initial outcry to her mother S.S. on April 2, 2016, as well as a video recording of an interview of I.W. conducted at the LaRabida Children's Advocacy Center on April 20, 2016 (the VSI). Following a hearing, the trial court found that both the April 2, 2016, outcry and the VSI contained "sufficient safeguards of reliability," and were admissible.

¶ 6        At trial, I.W. testified that she was 10 years old and was born on August 9, 2008. When she was seven years old, she lived in Riverdale with her mother S.S., older sister A.S., defendant, and half-sister A. The morning of April 2, 2016, S.S. went to the store and left I.W. at home with A.S., A, and defendant. I.W. was sleeping on the couch with A, lying on her side and facing the back of the couch while defendant was on the opposite end.

¶ 7        I.W. was awoken by defendant kneeling behind her and "dig[ging]" in her pants with his

hand. Defendant inserted his hand into her underwear and touched her "private part" and buttocks. I.W. explained that her "private part" was her vagina, and that defendant touched "inside" her buttocks. Defendant removed his hand from I.W.'s pants, licked his finger, and washed his hands.

¶ 8        When S.S. returned to the house later that morning, I.W. told her she needed to talk. I.W. appeared fidgety and nervous, fumbled with her hands, and could not keep still. S.S. took her to the basement so they could talk in private. I.W. became "teary-eyed" and told S.S. that, while she was sleeping, defendant touched her on her "coocoo" and her buttocks. S.S. noted that "coocoo" was a term the family used for vagina. On cross-examination, I.W. acknowledged that she did not tell S.S. that defendant put his finger inside her vagina or buttocks.

¶ 9        That evening, Registered Nurse Brittany Kelleher and two physicians performed a sexual assault examination of I.W. at Christ Hospital. I.W. told Ms. Kelleher that she was "asleep on the couch with her younger sister and her stepdad, and she woke up, and that he put his hands in her panties and put his finger in her butt and her coocoo, and after he licked it."

¶ 10       Linda Ford conducted a videorecorded VSI of I.W. at LaRibida on April 20, 2016. In the VSI, which was published to the jury, I.W. told Ms. Ford that defendant put his finger in her buttocks and vagina.

¶ 11       Defendant was arrested on April 21, 2016 and consented to a buccal swab. Christopher Webb, a forensic scientist with the Illinois State Police, testified that forensic testing revealed that a standard taken from I.W.'s vaginal swab did not contain male DNA and a standard from I.W.'s anal swab contained a small amount of male DNA unsuitable for profiling. A swab taken from the front panel and crotch area of I.W.'s underwear revealed a male DNA profile that matched defendant's DNA profile. Defendant could not be excluded from the male DNA profiles

taken from the rear panel and waistband of I.W.'s underwear.

¶ 12    A.S. was 14 years old at the time of trial. Defendant lived with A.S., S.S., and I.W. until 2016. A.S. testified that, at some point while defendant lived with them, A.S. and defendant were playing in S.S.'s room when defendant "grabbed" her vagina over her clothes. A.S. did not immediately tell anyone what happened but testified that "[i]t happened more than once."

¶ 13    The trial court sustained defendant's general foundational objection to A.S. testifying to the "other time that it happened." A.S. could not remember how old she was during the second instance but recalled that she was living in Riverdale at the time. After the trial court sustained another foundational objection, the parties had a discussion outside the presence of the jury. The State asserted that the alleged conduct between defendant and A.S. occurred between May 1, 2015, and September 30, 2015. The trial court ultimately sustained the objection and ruled that while A.S. was not required to testify to the exact date, the State was required to narrow the possible time frame for the conduct.

¶ 14    A.S. testified that she could not remember how old she was the second time defendant touched her vagina, nor could she remember what grade she was in or what season it was at the time, but stated that the two incidents were not "right after each other." A.S. told S.S. what happened at some point thereafter, and S.S. talked to defendant but did not call the police.

¶ 15    Defendant testified in his own defense that he had a "good" relationship with I.W. during the five years they lived together. On April 2, 2016, defendant was on the living room couch with I.W. and A while S.S. was gone. Defendant denied touching I.W.'s vagina or anus.

¶ 16    At the jury instruction conference, the State did not tender Illinois Pattern Instruction, Criminal, No. 11.66 (approved December 8, 2011) (hereinafter IPI Criminal No. 11.66), which is the pattern instruction required when evidence is admitted pursuant to section 115-10. Similarly,

defense counsel did not request IPI Criminal No. 11.66 be given or object to the failure to give the instruction.

¶ 17 The jury found defendant guilty of both counts of predatory criminal sexual assault and he was sentenced to a total term of 14 years' incarceration. The trial court advised defendant that, based on his convictions, he was subject to the requirements of the Sex Offender Registration Act (SORA) (730 ILCS 150/2(B), 150/3(a) (West 2018)) and would have "to register as a sex offender upon [his] release." This appeal follows.

¶ 18                                   ANALYSIS

¶ 19                            Other-Crimes Evidence

¶ 20 Defendant alleges that the trial court erred in admitting evidence that defendant sexually assaulted A.S. in 2015 when she was between the ages of 10 and 11 years old. Defendant admits that he forfeited this issue by failing to raise it in his posttrial motion but urges us to review this claim for ineffective assistance of counsel. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must show that his counsel's representation "fell below an objective standard of reasonableness" and second, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

¶ 21 Generally, evidence of other crimes is inadmissible to show a defendant's propensity to engage in criminal activity. *People v. McKibbins*, 96 Ill. 2d 176, 182 (1983). However, there is "a limited exception to this general rule of inadmissibility for other-crimes evidence to show the defendant's propensity to commit crimes" if a defendant is tried on one of the enumerated sex offenses set forth in Section 115-7.3 of the Code of Criminal Procedure of 1963. 725 ILCS 5/115-7.3 (West 2016); *People v. Ward*, 2011 IL 108690, ¶ 25.

¶ 22    Before other-crimes evidence may be admitted, the statute requires the trial court to "apply a balancing test, weighing the probative value of the evidence against the undue prejudice it may produce against the defendant." *Id*. ¶ 26. Relevant considerations include: (1) the proximity of time between the other offense to the charged offense; (2) the degree of factual similarities between the offenses; and (3) any other relevant facts and circumstances. 725 ILCS 5/115-7.3(c)(1)-(3). A circuit court's ruling concerning the admissibility of other-crimes evidence is reviewed for an abuse of discretion. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003); *People v. Johnson*, 2020 IL App (1st) 162332, ¶ 40.

¶ 23    Here, the State sought to admit other crimes evidence pursuant to section 115-7.3 to establish defendant's propensity to commit sexual assault. Specifically, the State sought to admit evidence that defendant committed two prior sex offenses against A.S. in 2015 (when she was between 10 and 11 years old) prior to sexually assaulting I.W. After a hearing, the trial court determined that the incidents involving A.S. were "close in proximity" and were "sufficiently similar" to the incident involving I.W. We will not reverse the decision of the trial court to admit evidence of other crimes absent an abuse of discretion.

¶ 24    Defendant contends that A.S. did not testify to "a concrete – or even a general – time range" for defendant's prior assault. However, in cases where the victim of the charged offense is not able to remember exact dates and times, this inability "merely affects the weight to be given the testimony and, taken alone, does not create reasonable doubt." *People v. Foley*, 206 Ill. App. 3d 709, 715 (1990) We find that A.S.'s testimony that defendant assaulted her while he was living with her family in Riverdale provided a sufficient timeframe for the admission of this evidence.

¶ 25    Defendant also argues that the court erred in its application of the statutorily mandated balancing test. He asserts that defendant's assaults of I.W. and A.S. shared only "general similarities" and, therefore, the prejudicial impact of the other-crimes evidence "far outweighed" any probative value.

¶ 26    As set forth above, section 5/115-7.3(c) of the Code requires a court to consider the proximity in time of the two offenses, the degrees of factual similarities between the two offenses, and any other relevant facts and circumstances. 725 ILCS 5/115-7.3(c). While the offenses need not be factually identical, "as factual similarities increase, so does the relevance, or probative value, of the other-crimes evidence." *Donoho*, 204 Ill. 2d at 184. Where the other-crimes evidence is not being offered under the *modus operandi* exception, "'mere general areas of similarity will suffice' to support admissibility." *Id.* (quoting *People v. Illgen*, 145 Ill. 2d 353, 370 (1991)). The existence of some differences between the offenses does not defeat admissibility. *Id.* at 185.

¶ 27    In this case, other-crimes evidence was admitted to establish propensity, not *modus operandi*. Therefore, the relevant inquiry is whether the two offenses shared general areas of similarity. Defendant's reliance on cases where other crimes evidence was admitted to prove *modus operandi* in which "a high degree of similarity" is required is misplaced. *People v. Allen*, 335 Ill. App. 3d 773, 776 (2002); see also *People v. Johnson*, 406 Ill. App. 3d 805, 811 (2010) (rejecting the defendant's contention that the general similarities between two sexual assaults were insufficient because the other-crimes evidence was not being offered under the *modus operandi* exception).

¶ 28    Initially, we note that both crimes occurred within a relatively short time period. See *Donoho*, 204 Ill. 2d at 184 (finding that the 12 to 15 year gap in time between the other-crimes

evidence and the charged offense was insufficient, by itself, to render the admission of the other-crimes evidence an abuse of discretion). Furthermore, A.S. and I.W. were both stepdaughters of the defendant and of a similar age at the time of the offenses. Both victims were living with defendant at the time of the assaults and thought of him as a father figure. Defendant approached both victims while they were alone together at the family home (aside from an infant in I.W.'s case). Defendant touched both victims in the vaginal area with his hand.

¶ 29    Considered as a whole, we find the two offenses shared sufficient similarities to be admitted as propensity evidence. In determining that admitting the other-crimes evidence was not an abuse of discretion, we acknowledge that the two offenses were not identical, most notably because defendant touched I.W.'s vagina and anus under her clothing while he touched A.S.'s vagina over the clothing. However, as discussed herein, the existence of some factual disparities does not render the other-crimes evidence inadmissible. See *People v. Cerda*, 2014 IL App (1st) 120484, ¶ 190 (recognizing that the existences of some factual disparities between the other crime and charged offense does not defeat the admissibility of other-crimes evidence).

¶ 30                          Required Jury Instruction

¶ 31    Defendant next argues that he was denied a fair trial where the trial court failed to instruct the jury using IPI Criminal No. 11.66 as required by section 115-10(c) of the Code. He admits he forfeited this claim by failing to object at trial or in a posttrial motion, but seeks review under principles of plain error. Alternatively, he argues that defense counsel was ineffective for failing to offer the instruction or object to the court's failure to give the instruction.

¶ 32    Section 115-10 allows the admission of hearsay statements in prosecutions for a sexual act committed upon or against a child under the age of 13. Subsection (c) provides that, if the

trial court admits a hearsay statement pursuant to this exception, the trial court must specifically instruct the jury that:

> "[I]t is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, *** the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." 725 ICLS 5/115-10(c).

IPI Criminal No. 11.66 was designed to implement the instruction required by section 115-10(c). See IPI Criminal No. 11.66 (committee note); *People v. Bryant*, 391 Ill. App. 3d 1072, 1084 (2009).

¶ 33     The parties agree that IPI Criminal No. 11.66 was required in this case, that it was not given, that defense counsel failed to ask for it, that the failure to instruct the jury with IPI Criminal No. 11.66 was error, and that defendant failed to preserve the error. The only dispute between the parties on this issue is whether plain error review is appropriate.

¶ 34     Appellate review of jury instructions is governed by Supreme Court Rules 366(b)(2)(i) and 451(c). Ill. Sup. Ct. R. 366(b)(2)(i) (eff. Feb. 1, 1994); Ill. Sup. Ct. R. 451(c) (eff. July 1, 2006). Rule 366(b)(2)(i) provides that "No party may raise on appeal the failure to give an instruction unless the party shall have tendered it." Additionally, our supreme court has held that "a defendant will be deemed to have procedurally defaulted his right to obtain review of any supposed jury instruction error if he failed to object to the instruction or offer an alternative at trial and did not raise the issue in a posttrial motion." *People v. Sargent*, 239 Ill. 2d 166, 188-89 (2010).

¶ 35     Supreme Court Rule 451(c) "fashions a limited exception to the general rule to correct 'grave errors and errors in cases so factually close that fundamental fairness requires that the jury

be properly instructed.'" *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007) (quoting *People v. Herron*, 215 Ill. 2d 167, 175 (2009)). Rule 451(c) provides, in relevant part: "'substantial defects' in criminal jury instructions 'are not waived by failure to make timely objections thereto if the interests of justice require.'" *Id.* (quoting Rule 451(c)). Our supreme court has held that Rule 451(c) is "coextensive" with the plain error rule, and that "the two rules are construed identically." *Id.*

¶ 36     The plain error rule permits a reviewing court to consider an unpreserved error when a clear or obvious error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* at 565. Under either prong, the burden of persuasion rests with the defendant. *Sargent*, 239 Ill. 2d at 190.

¶ 37     The parties agree that the failure to properly instruct the jury in accordance with section 115-10(c) was clear and obvious error. Defendant is not seeking second prong plain error review. See *id.* at 192 (rejecting second prong plain error review under similar circumstances where the jury was instructed on judging believability of witnesses pursuant to IPI Criminal No. 1.02). Therefore, the issue in this case is whether the first prong of the plain error test is met such that we may review the unpreserved error. Defendant argues that the evidence was closely balanced because he "credibly denied I.W.'s claims" at trial and "the physical evidence presented, at best, conflicted evidence of [his] guilt."

¶ 38     We disagree and find the evidence in this case was not closely balanced. As previously noted, I.W. made immediate outcries to S.S. and Nurse Kelleher which were largely corroborated

by her subsequent videorecorded VSI and the presence of defendant's DNA on the front panel and crotch area of I.W.'s underwear. Further, the testimony of A.S. was properly admitted as propensity evidence. Accordingly, we find that the failure to give IPI Criminal No. 11.66 did not threaten "to tip the scales of justice" against defendant, and first prong plain error does not apply. *Piatkowski*, 225 Ill. 2d at 565.

¶ 39    Defendant alternatively argues that his trial counsel was constitutionally ineffective for failing to request IPI Criminal No. 11.66 or object to the failure to give the instruction. A reviewing court's analysis of prejudice under *Strickland* is similar to its analysis under first prong plain error. See *People v. Johnson*, 218 Ill. 2d 125, 143-44 (2005). Having determined that the evidence is not closely balanced and that defendant is not entitled to first-prong plain error review, we similarly find that defendant cannot satisfy the requisite prejudice under *Strickland*. In other words, there is no reasonable probability that the outcome of the trial would have been different if the jury had been properly instructed with IPI Criminal No. 11.66.

¶ 40    In reaching this determination, we note that the jury was "not left without direction regarding how it was to approach the victim's statements." *Sargent*, 239 Ill. 2d at 192. Among the instructions it received was:

> "Only you are the judges of believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his age, his memory, his manner while testifying, any interest, bias or prejudice he may have and the reasonableness of his testimony considered in the light of all the evidence in the case."

¶ 41    While the language of these two instructions is not identical, "they convey similar principles regarding the jury's role in assessing witness credibility and the various criteria jurors

may consider when making that assessment." *Id.* at 192. The jury in this case was specifically instructed to consider the victim's age. Furthermore, "the directive for the jury to take into account the nature of the statement, or the circumstances under which the statement was made, seems implicit in the instruction it did receive to 'take into account [the witness's] ability and opportunity to observe *** and the reasonableness of his testimony considered in the light of all of the evidence in the case.'" *Id.* We find that defendant has not established that there is a reasonable probability that, but for counsel's failure to tender the proper jury instruction, the trial result would have been different.

¶ 42                              Constitutional Challenge to SORA

¶ 43        Finally, defendant challenges the constitutionality of SORA, arguing that that it establishes "significant disabilities and restraints that touch on nearly every aspect of registrants' lives," and therefore violates substantive and procedural due process because the statute does not allow for consideration of individual characteristics or risks of reoffending.

¶ 44        Conversely, the State argues that this court lacks jurisdiction to consider defendant's constitutional challenges to SORA. Citing the Illinois Supreme Court's decision in *People v. Bingham*, 2018 IL 122008, the State argues that defendant "cannot raise a constitutional challenge to the Illinois Sex Offender Registration Act on direct appeal from his criminal conviction which triggered its application."

¶ 45        In *Bingham*, the defendant was convicted of attempted criminal sexual assault in 1983. 2018 IL 122008, ¶ 1. He was not required to register as a sex offender at the time of his conviction but subsequent amendments to SORA imposed a registration requirement upon him when he was convicted of theft in 2014. *Id.* The defendant argued that the requirements particular to sex offenders, such as registration, were unconstitutional as applied to him on

substantive due process grounds. *Id.* ¶¶ 2, 14. In response, the State asserted that a reviewing court did not have the power on direct appeal to order that a defendant be relieved of the requirement when it was not imposed by the trial court. *Id.* ¶ 15.

¶ 46    Ultimately, our supreme court found that it lacked jurisdiction to resolve the defendant's constitutional claim. *Id.* ¶ 25. The court explained that the trial court "did not impose these restrictions as part of its sentence. Instead, these laws automatically applied to defendant, no matter the trial court's sentence." *Id.* ¶ 20. The court further explained, "Sex offender registration is a matter controlled by statute and was not a requirement imposed by the trial court in this case, and thus it is not reflected in the trial court's judgment." *Id.* Thus, the registration requirement was a "collateral consequence," or an "effect upon a defendant that the circuit court has no authority to impose, and it results from an action that may or may not be taken by an agency that the trial court does not control." *Id.* ¶ 10, n.1.

¶ 47    The court concluded that "a reviewing court has no power on direct appeal of a criminal conviction to order that defendant be relieved of the obligation to register as a sex offender when there is neither an obligation to register imposed by the trial court nor an order or conviction that the defendant is appealing that is directly related to the obligation or failure to register. *Id.* ¶ 18. To allow defendants to challenge collateral consequences of a conviction—not only sex offender registration but the loss of the right of a felon to vote or possess firearms, for example—on direct appeal "would place a reviewing court in the position of ruling on the validity (or resolving the details) of regulatory programs administered by state agencies and officials that are not parties to the action." *Id.* ¶ 19.

¶ 48    While the supreme court ultimately dismissed the defendant's constitutional challenge, it also suggested that in the future, constitutional challenges to SORA *could* be mounted in two

possible ways: "(1) through a direct appeal from a case finding a defendant guilty of violating the regulation he attempts to challenge as unconstitutional, such as the sex offender registration law [citation], or (2) by filing a civil suit seeking a declaration of unconstitutionality and relief from the classification as well as the burdens of sex offender registration." *Id.* ¶ 21. Put simply, defendant does not follow either suggested avenue for relief in this case.

¶ 49　　　　We conclude that defendant's constitutional challenge to SORA is foreclosed by *Bingham*. Like *Bingham*, this case is a direct appeal from a criminal conviction in which defendant challenges the constitutionality of SORA. Defendant's conviction and sentence related to his assault of I.W. and not his failure to register as a sex offender. Defendant's obligation to register will arise upon his release from imprisonment by operation of law. See 730 ILCS 150/3(c)(4) (West 2018). This obligation was not a requirement imposed by the trial court, but rather a collateral consequence of his conviction and status as a sex offender. This case falls squarely under the holding in *Bingham*, and we must dismiss defendant's claim accordingly.

¶ 50　　　　In doing so, we reject defendant's claim that *Bingham* applies only to as-applied challenges. This argument has been considered and rejected before. See, *e.g.*, *People v. Wells*, 2019 IL App (1st) 163247, *appeal denied*, No. 125194 (Nov. 26, 2019) (Table). Defendant offers no reason to depart from existing precedent.

¶ 51　　　　Defendant also argues that *Bingham* is inapposite and contends that we have jurisdiction to hear his constitutional claim in accordance with *People v. Rodriguez*, 2019 IL App (1st) 151938-B. In *Rodriguez*, we acknowledged *Bingham* but found the defendant could raise his SORA challenges on direct appeal because the trial court explicitly ordered him "to register under SORA within three days (and it was this order from which [the defendant] appealed)." *Id.* ¶¶ 10, 37. In this case, the trial court merely advised defendant, "[Y]ou will have to register as a

sex offender upon your release," pursuant to the applicable statute. We disagree with defendant that registration was a "mandatory component of his sentence." Rather, registration was a collateral consequence of his conviction. *Rodriguez* is inapplicable and we dismiss defendant's constitutional challenges to SORA for lack of jurisdiction.

¶ 52                                                CONCLUSION

¶ 53        For the reasons stated, we dismiss the portion of defendant's appeal challenging the constitutionality of SORA. We affirm defendant's conviction for predatory criminal sexual assault in all other respects.

¶ 54        Appeal dismissed in part; affirmed.